Our ruling in this case is merely that the writ of injunction was not necessary, and therefore not the proper remedy, to prevent the confirmation of a judgment by default against the insolvent corporation, Equitable Casualty & Surety Company, because the matter of allowing or refusing to allow the judgment to be confirmed against the insolvent surety company before the other defendant can be heard is largely within the discretion of the district judge, and is entirely under his control. With this explanation, the application for a rehearing is refused.

(138 So. 433)

**WEBRE et al. v. GRAUGNARD.**
No. 29715.

Nov. 3, 1931.

Rehearing Denied Nov. 30, 1931.

C. C. Weber, of Donaldsonville, for appellant.

Walter Lemann, of Donaldsonville, and George S. Guion, of New Orleans, for appellees.

ODOM, J.

Mrs. Marie J. Webre, a widow, died intestate, leaving six children and the children of a predeceased son as her sole heirs. The succession owed debts, including expenses of last illness and funeral expenses, amounting to $558.04. Among her effects there were certain negotiable bonds of the par value of $4,000. In order to avoid the expenses of an administration, one of the daughters, Miss Eugenie, who with another daughter and a brother were living with their mother at the time of her death, took these bonds to the defendant and asked him to sell them, pay the debts, and distribute the net proceeds among the heirs. Defendant sold the bonds for $3,882.83. After paying the debts amounting to $558.04, there remained in his hands $3,324.79, which he attempted to pay to the heirs according to their pro rata share, the sum of $474.97 to each of the living children and a like amount to the grandchildren. He drew checks made payable to them and delivered them to the heirs.

Only one of these checks, the one to George Webre, who has died since, was accepted and cashed.

The present suit is brought by the five children who are living and by the grandchildren against the defendant for $4,000, the par value of the bonds sold by him, and legal interest thereon from September 5, 1924, the date on which the bonds were sold.

They allege that defendant unlawfully and without their consent took possession of the bonds, sold them, and should now account to them for the proceeds, with interest.

The defendant does not deny that he was due the heirs the net proceeds of these bonds, and alleged that he tendered to them his checks in payment of the amounts due them, which each of them, except George Webre, refused to accept, and in open court tendered these outstanding checks, which were again refused.

There was judgment in the district court in favor of plaintiffs as prayed for, and defendant appealed.

There is but little dispute as to the facts. Defendant says that when Miss Eugenie Webre brought the bonds to him and asked him to sell them, pay the debts, and distribute the net proceeds, she told him that she had conferred with all the other heirs and that they had agreed to this method of procedure and had authorized her to act for them. Miss Eugenie admits that she delivered the bonds to defendant and instructed him to proceed as he did, but she does not recall that she told him she was authorized by the others. But whether she told him she was authorized or not, it is perfectly clear that defendant thought this method of handling the affairs of the succession was satisfactory with the other heirs, and it is clear also that Miss Eugenie also thought her actions were satisfactory and would be approved by them.

The record discloses the utmost good faith on the part of both Miss Eugenie and defendant.

There was some suggestion in oral argument that defendant was an intermeddler and has therefore become liable for the debts of the succession. C. C. art. 1100.

An "intermeddler" is one who takes possession "of a vacant succession, or a part there-

of, without being duly authorized to that effect, *with the intent of converting the same to his own use.*" (Italics ours.) C. C., art. 1100.

■ There is not a line, not a word, in the testimony which shows or even indicates that defendant took possession of the bonds which were part of the succession property with intent to appropriate them to his own use. Quite to the contrary, the bonds were delivered to him by one of the heirs, who requested him as a friend of the family to sell them and pay the debts in order to escape the expense of an administration. When the bonds were sold and the debts paid, he at once rendered a statement showing the net amount remaining in his hands, drew and delivered checks to each of the heirs for their pro rata share.

Clearly, the defendant was not an intermeddler.

The debts of the succession paid by defendant consisted of an account due by deceased at the time of her death to a commercial firm of which defendant was a member, amounting to $350.29, insurance amounting to $35, a drug account for $52.75, $85 for a hearse, $20 to Dr. Himel, and $15 for "bread account." That these accounts were just and due and that the heirs were bound for them is not disputed by them.

As to Miss Eugenie Webre, she expressly authorized defendant to act. George Webre ratified these transactions by accepting his pro rata of the net proceeds of the sale of the bonds. There was also an implied ratification on the part of Ben Webre. The transactions undertaken by defendant were well known to him and he apparently acquiesced, although he never cashed the check, but when he received it, the only objection he raised was that on its face the check did not specify that it was for his pro rata share of the bonds, and he was afraid that by accepting it he would forfeit his interest in the entire succession. He carried the check back to defendant with the request that defendant write on its face that it was in payment of his share of the bonds. This was done and the check was then handed back to him and he still has it.

■ However, aside from any question of authorization or ratification on the part of these heirs, except Miss Eugenie and George (the one expressly authorizing defendant to act for her and the other ratifying his acts by accepting the check), and conceding that defendant had no express or implied authority to manage the affairs of these heirs, and assuming that he took it upon himself to do so, we think he should be classed as a negotiorum gestor, and that the rules laid down in Civil Code, articles 2295 to 2300, inclusive, should apply.

Article 2299 reads as follows:

"Equity obliges the owner, whose business has been well managed, to comply with the engagements contracted by the manager, in his name; to indemnify the manager in all the personal engagements he has contracted; and to reimburse him all useful and necessary expenses."

No one should or can be held responsible for the acts of another done to his prejudice and against his will. But when a man takes upon himself the management of the affairs of another as a friend, not for his own benefit and advantage and not against the will but solely in the interest of another, he is a negotiorum gestor, and where he manages the affairs of the other well, "equity obliges the owner * * * to comply with the engagements contracted by the manager, in his name." C. C. art. 2299; Woodlief & Legendre v. Moncure, 17 La. Ann. 241.

■■ This is not a case where a person intruded his services upon another against his

will, but, on the contrary, the defendant was invited to act for all the heirs by one of them, and though the others did not, apparently, join in the invitation, they did not object and there is testimony to warrant the inference that they at least knew that he was acting for them.

It is not contended that defendant's management of the affair resulted in hurt or injury to these plaintiffs. To the contrary, it appears that they were benefited at least to the extent of the cost which would have resulted from an administration of the succession. We think, under the facts disclosed, these plaintiffs are bound by the acts of defendant.

Plaintiffs demand that defendant account to them for the par value of the bonds sold. He is not bound to account to them for the par value unless as a matter of fact they were worth par when sold, and there is no testimony that they were. Defendant sold them in the open market for $3,882.83, and as he acted in good faith and as there is no suggestion that they were worth more, we must hold that he should account for only that amount. From this amount defendant is entitled to deduct the amount of the debts of the succession, $558.04, which he paid, plus the amount paid to George Webre, $474.79, or a total of $1,032.83. After making these deductions there remained in his hands $2,850 to be distributed among the five living children and the children of the predeceased son of the deceased.

On October 29, 1924, defendant made out and tendered to each of the children and to the children of the deceased son his check for one-sixth of this amount, which they refused to accept.

Under the circumstances we do not think defendant should pay interest on the sum left in his hands.

For the reasons assigned, it is therefore ordered and decreed that the judgment appealed from be amended so as to read as follows: It is ordered, adjudged, and decreed that the defendant, F. A. Graugnard, pay to Fred Webre, Marguerite Webre, Euphemie Webre, Eugenie Webre, and Ben Webre each one-sixth and to the heirs of Joseph Webre jointly one-sixth of the balance remaining in his hands from the proceeds of the sale of said bonds after deducting the debts of the succession paid by him and the amount paid to George Webre, and as thus amended the judgment is affirmed; the costs of this appeal to be paid by plaintiffs, all other costs to be paid by defendant.