151 So. 763

## GILMORE et al. v. GASQUET.

### No. 32553.

Nov. 27, 1933.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellant.

Charles J. Rivet, of New Orleans, for appellees.

BRUNOT, Justice.

The plaintiffs are attorneys at law. The suit is for $34,696.80, alleged to be due the plaintiffs for professional services rendered by them to the defendant. The sum sued for consists of two items: One, of $18,696.-80, alleged to be due Thomas Gilmore and the partnership composed of George Seth Guion and John R. Upton, and the other, of $16,000, alleged to be due Thomas Gilmore, individually. The prayer of the petition is for judgment for the sum of the two items, with legal interest thereon from judicial demand, and for the costs of the suit.

The defendant excepted to the petition on the ground of vagueness, and, in compliance with an order of court, the plaintiffs, by supplemental petition, amended paragraphs 8 (a), 9 (a), 10 (a), and 12 (a) of their

original petition. The answer of the defendant admits, without qualification, the first seven paragraphs of the original petition, but denies, or admits with qualifications, all other paragraphs of the original and supplemental petitions except paragraph 20 of the original petition, which paragraph, he avers, should be expunged from the record as containing averments that are impertinent and not germane to the issues. All of the allegations of the petitions relating to the services performed by Thomas Gilmore between the rendition of the judgment of interdiction and the preparation of the suit to annul that judgment, and the alleged value of the services rendered by the plaintiffs in the last-mentioned suit, are put at issue by the defendant's answer. The case was tried on the issues thus presented, and judgment was rendered in favor of the plaintiffs, Gilmore, Guion & Upton, jointly, for $12,031.80, with legal interest thereon from judicial demand until paid, and for the costs of the suit; and in favor of Thomas Gilmore, individually, for $5,000, with like interest thereon and costs. The defendant appealed suspensively from both judgments.

The plaintiffs have answered the appeal and pray for the amendment of the judgments by increasing the amounts thereof to $16,531.80 and $10,000, respectively, with legal interest on both sums from judicial demand until paid.

The record discloses that Thomas Gilmore and the defendant were personal friends, and were on terms of social intimacy before and since the defendant's interdiction. The defendant became an habitual drunkard and a narcotic addict and, under the provisions of Act No. 100 of 1890, he was interdicted by a judgment of the civil district court on June 15, 1914. Thomas Gilmore was employed by the defendant to represent him in the suit which terminated in the judgment decreeing his interdiction. The fee charged by Mr. Gilmore for defending the suit was $7,500. At that time Mr. Gilmore had borrowed from the defendant, at various times, sums of money aggregating $1,200. After the rendition of the judgment, the curator of the interdict paid Mr. Gilmore $6,300 in full satisfaction of all sums due him by the interdict. Some time thereafter the interdict became restive under the judgment of interdiction and had a number of friendly conferences with Mr. Gilmore, in the hope of having his status, as a normal person capable of managing his own affairs, restored to him. In these conferences Mr. Gilmore assured him that nothing in that respect was possible of accomplishment. In 1917 the defendant left the state and located in Tennessee, where he resided until 1927. While a resident of Tennessee, he married, ceased to indulge in intoxicating liquors, and became the father of a son. He returned to Louisiana in 1927 and again consulted Mr. Gilmore. Knowing that the defendant was no longer an inebriate, but, upon the advice of his physician, that his system required the use of narcotics, Mr. Gilmore made two or more trips to Bay St. Louis, Miss., in the interest of the defendant, for the purpose of ascertaining from Dr. Lewis the possibility of the defendant acquiring narcotics, for his personal needs, in a lawful manner. Later, at the suggestion of Mr. Gilmore, Mr. Guion, of the firm of Guion & Upton, was consulted with the view of having the judgment of interdiction revoked.

The plaintiffs, acting jointly, reached the conclusion that the interdiction could be revoked provided Act No. 100 of 1890 was amended, with respect to its title and section 1 thereof, so as to provide a legislative definition of an inebriate or habitual drunkard within the purview of the act, as an infirmity for which a person may be interdicted. A mere reading of Act No. 100 of 1890 and Act No. 191 of 1932 convinces us that the preparation of the amending statute required but little time and the exercise of no unusual professional skill or research. It is shown that Mr. Guion was in Baton Rouge and attended the 1932 session of the Legislature from the time Senate Bill No. 165, which is now Act No. 191, was introduced until its final passage, but it is also shown that Mr. Guion was interested in another legislative matter during that time. We mention this fact to dispel the idea that Mr. Guion remained in Baton Rouge for more than a month solely for the purpose of observing the progress of Senate Bill No. 165 to its final passage.

█ In suits upon a quantum meruit, it is the rule to award the plaintiff as much as he reasonably deserves for his services, and the time and labor required to overcome real or imaginary difficulties must be considered as important elements in determining the value thereof.

With the facts stated, and this rule in mind, we approach a consideration of the expert testimony in the record. It appears that the expert testimony offered by the plaintiff was given by Mr. Merrick, Mr. Adams, and Mr. Henriques, all members of the New Orleans bar, and lawyers of long standing and recognized ability. Their tes-

timony was in answer to a hypothetical question framed largely upon the allegations of the plaintiffs' petition. The witnesses had no connection with the case, and their valuation of the services performed is based upon the assumption that the facts recited in the hypothetical question are true. In his answer, Mr. Merrick values all services rendered by all of the plaintiffs at $24,000. Mr. Adams expresses no opinion as to the value of Mr. Gilmore's individual services, but he says that, predicated on the Canon of Ethics of the American Bar Association, he would not have charged less than $10,000 for all other services. Mr. Henriques' testimony was practically the same as that given by Mr. Adams.

The defendant called Mr. Monte M. Lemann and Mr. Joseph W. Carroll, also leading members of the bar. Mr. Lemann did not consider Mr. Gilmore's individual services, but valued the joint services of the plaintiffs in lifting the interdiction at $10,000. Mr. Carroll testified that he is familiar with all proceedings had in the matter of lifting the interdiction, and that for all services rendered by the plaintiffs therein, a maximum fee of $5,000 would be ample compensation therefor.

██ The testimony as a whole has led us to the conclusion that Mr. Gilmore is entitled to compensation for consultations and services, of some value, rendered the defendant during the interim between his interdiction and the opening of the negotiations with Guion & Upton, which terminated in the successful prosecution of the defendant's suit for the restoration of his civil status. We think an award of $1,000 is reasonable com-

pensation for these services and that $10,-000 is reasonable compensation for all services rendered the defendant by the plaintiffs jointly. We find that the plaintiffs expended, in costs, for the account of their client, $31.80. They are entitled to recover that sum.

For these reasons, the judgment appealed from is amended by reducing the amount awarded therein to Gilmore, Guion & Upton, jointly, from $12,031.80 to $10,031.80, and by reducing the amount awarded therein to Thomas Gilmore, individually, from $5,-000 to $1,000, and, as thus amended, it is decreed that said judgment be affirmed; the costs of the appeal to be paid by the appellees.