137 So.2d 680 (1962)
J. Roy HAASE
v.
Noel V. BRUMFIELD.
No. 5476.
Court of Appeal of Louisiana, First Circuit.
February 6, 1962.
*681 Watson, Blanche, Wilson, Posner & Thibaut, by Charles W. Wilson, Baton Rouge, for appellant.
Hynes & Lane by Horace Lane, Baton Rouge, for appellee.
Before ELLIS, HERGET and MILLER, JJ.
HERGET, Judge.
Plaintiff, a licensed architect, filed suit against Defendant for $3,330 of which amount $3,150 represented 4½ per cent of the estimated cost of the construction of a contemplated two-story building which was not erected and $180 represented the cost of time and material for redrafting plans for the construction of a one-story building which was in fact built by Defendant. Said sums being alleged to be due to Plaintiff for architectural services rendered to Defendant under a verbal contract; or, in the alternative, if no contract existed Plaintiff seeks the recovery of $4,500 in quantum meruit.
Defendant answered Plaintiff's suit and admitted the employment of Plaintiff to prepare plans and specifications for a building to be erected by him but maintained that under the contract Plaintiff was to be compensated for services rendered by him on the basis of 4½ per cent of the cost of the building ultimately constructed by Defendant and for redrafting plans and specifications for the building actually erected, the total cost of which was $29,955.71; 4½ per cent amounting to $1,348.02, plus $180 for redrafting plans and specifications previously prepared by Plaintiff for a two-story building so as to adapt the use of same to the construction of the building Defendant finally built. And Defendant deposited in the Registry of the Court of total sum of $1,568.02, $1,348.02 representing 4½ per cent of $29,955.71, the cost of the building; $180 representing the charge of Plaintiff for redrafting the plans; $15 representing court costs; and $25 representing legal interest from judicial demand to the date of the deposit in the court.
From a judgment of the Trial Court rejecting Plaintiff's demand in excess of the amount tendered, at his cost, Plaintiff appealed to this Court.
Prior to the resolution of the issues involved, it is fit to point out that the Court was refreshingly impressed with the candor, *682 truthfulness and integrity of all the parties to the litigation and to opine that our decision represents our effort to settle justly honest differences of opinion between the parties.
Defendant Noel V. Brumfield, a druggist, contemplating the erection of his own drug store building, on the recommendation of his brother-in-law Mr. J. M. King a local contractor, contacted Plaintiff for the purpose of employing him as his architect. On the second visit of Defendant to Plaintiff's office the Defendant raised the question as to the charges for the services Plaintiff was to render him. Unfortunately, from a review of all of the testimony, we are unable to say that there was ever any understanding between the parties as to the charges of Plaintiff. The evidence reveals that in reply to Defendant's query as to Plaintiff's fee, Plaintiff informed Defendant that such would be 6 per cent of the cost of the building and it was broken down into 4½ per cent of the cost for the plans and specifications and 1½ per cent for the supervision of construction, making a total of 6 per cent. Plaintiff related that in connection with his conversation with Defendant in regard to his fee he gave to Defendant a brochure prepared by the Baton Rouge Chapter of the American Institute of Architects which presents a statement on the services of the architect and the recommended minimum fees. It is to be noted that in the exhibit which was offered in evidence, under Article II "Method of Compensation," we find: "The percentage fee is the usual method of compensation. Under this method the Architect's fee is a percentage of the cost of the completed work." * * * Though admittedly Defendant was given a copy of this brochure by Plaintiff, there was no discussion between Plaintiff and Defendant of the instrument. The evidence in regard to the fixation of Plaintiff's fee for his architectural services is very meager. Though Plaintiff testified that Defendant understood his charges, on the trial of the case Defendant related that from his discussion with Plaintiff he contemplated the charges of Plaintiff to be 4½ per cent of a completed building. We observe that while Plaintiff testified that his charges were to be 6 per cent for his services in drafting the plans and specifications and supervising the work to completion, the evidence does not show on what occasion or under what circumstances the undertaking of Plaintiff to supervise the work was dispensed with, though both parties apparently were satisfied to eliminate this portion of Plaintiff's contract for, in fact, he did not supervise the construction of the completed building, made no charges therefor nor did Defendant complain of his failure to supervise the construction of the building.
In the course of the discussions between Plaintiff and Defendant the evidence reveals that a rough draft was prepared for a building to be two stories and that a cost which Defendant informed Plaintiff he would be able to expend on the building was some $45,000 but this limitation was raised to some $52,000 following conversations between Plaintiff and Defendant of the estimated cost of the proposed building. Though Defendant maintains that the limitation of $52,000 represented an absolute limit of the amount of funds he could expend for the building, Plaintiff denies that there ever was any limitation as to the amount to be expended and the evidence reveals that plans were drafted by Plaintiff for the erection of a two-story building, which plans were not submitted to contractors in general for bids but, at the request of Defendant, Mr. King upon being furnished the plans made a bid of $70,000, however there is in evidence the statement that this amount was subsequently reduced to $65,000. The evidence further reveals that a casual effort was made by Defendant to secure a loan from an insurance company to finance the $70,000 building but the application was rejected in its entirety. It does not appear that Defendant seriously made any real effort to obtain a $70,000 loan, the referred to *683 transaction with the insurance company being made by a relative of his. In any event, subsequent to the rejection of the application for the loan Defendant and Plaintiff again conferred, at which time Plaintiff agreed that for the price of $180 representing the actual cost to him of revising the two-story planned building he would prepare plans and specifications for the Defendant of a one-story building. Plaintiff and one of his witnesses, who was an employee of his, related that on this occasion Plaintiff informed Defendant that his charges for architectural services would be 4½ per cent of the $70,000 for drafting plans for the proposed two-story building which was abandoned and $180 additional for making such plans adaptable to the erection of the one-story building. Defendant denied that any conversation ever took place between him and Plaintiff in relation to the charge of 4½ per cent of the proposed $70,000 building plus an additional $180 for the revised plans and the only time he was apprised of such charges was subsequent thereto when Plaintiff sent a bill itemizing the charges for his services.
Plaintiff points to Article IV of the brochure establishing the schedule of proper minimum fees to be charged by architects, reading as follows:
"PAYMENT FOR PROFESSIONAL SERVICES
"Payments to the Architect on his commission, in percentage of his total fee, computed on a reasonable estimated cost of the completed work, should be made as the work progresses which is recommended as follows:
"25% upon completion of STUDIES and PRELIMINARY DRAWINGS.
"50% upon completion of WORKING DRAWINGS and SPECIFICATIONS.
"25% During CONSTRUCTION.
"Any variance between the ESTIMATED COST and the ACTUAL COST of the completed work should be adjusted in the FINAL PAYMENT of the fee.
"During the preparation of preliminary studies and the specifications and general working drawings, it is proper that PAYMENTS ON ACCOUNT be made at monthly or other intervals in proportion to the progress of the Architect's service."
It is his contention that under the provisions set forth therein that he is entitled to a fee of 4½ per cent of the estimated cost of the two-story building or $70,000.
From a reading of the voluminous record it is apparent that it should have been obvious to Plaintiff that Defendant had made no arrangements to finance the contemplated building. Furthermore, it was apparent that Defendant did not himself have the funds on hand but that a major portion of the cost of the building would have to be financed by a mortgage. The various changes and additions to the contemplated two-story building were made, according to Plaintiff, at the request of Defendant; and according to Defendant upon the joint understanding of Plaintiff and Defendant that the changes would be made and the contemplated additions resulting in the increased cost could be removed if after completion thereof and bids were taken thereon such could not be done within the financial ability of Defendant. Defendant's explanation was in these words in reply to the query:
"Q I say tell us what you and Mr. Haase discussed when you were trying to determine whether these extra items could be fitted in?
"A Well, we would debate about the items, and Mr. Haase would say, `Well, we will fit it in there and see if we can do it, and if we can all right and if we can't we will take it out or mark it off in order to keep the cost down.'"
The burden of proof rests upon Plaintiff to prove the existence of a contract *684 between himself and Defendant for the architectural services and the fee agreed upon to be charged therefor. It is apparent that there was no meeting of the minds between Plaintiff and Defendant either on the proposed building to be erected by Defendant or on the charges to be made by Plaintiff for preparing plans and specifications. Unquestionably Plaintiff has failed to prove by a preponderance of the evidence an agreement as to the amount of his fee for architectural services rendered to Defendant.
In the absence of a contract the compensation due Plaintiff for services rendered to Defendant must be fixed by resorting to equity.
LSA-Civil Code, Art. 1965, reads as follows:
"The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."
LSA-Civil Code, Art. 2292, reads as follows:
"Certain obligations are contracted without any agreement, either on the part of the person bound, or of him in whose favor the obligation takes place.
"Some are imposed by the sole authority of the laws, others from an act done by the party obliged, or in his favor.
"The first are such engagements as result from tutorship, curatorship, neighborhood, common property, the acquisition of an inheritance, and other cases of a like nature.
"The obligations, which arise from a fact, personal to him who is bound, or relative to him, result either from quasi contracts, or from offenses and quasi-offenses."
LSA-Civil Code, Art. 2293, reads as follows:
"Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties."
LSA-Civil Code, Art. 2294, reads as follows:
"All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi contracts. But there are two principal kinds which give rise to them, to wit: The transaction of another's business, and the payment of a thing not due."
Prior to a resolution of the issues involved herein on an equitable doctrine, it is appropriate to point out that all of the unpleasantness, controversy and litigation could have been avoided by a written contract setting forth the obligations, duties and charges to be made by the architect and consent thereto of the Defendant. Though such contract need not be in writing, it is apparent that an architect in dealing with the general public would eliminate the ugly head of controversy as to his fee by the simple expediency of reducing the agreement to writing.
In Mid-State Tile Company v. Chaudoir, La.App., 77 So.2d 552, at page 555, the Court of Appeal for the Second Circuit observed:
"The action upon quantum meruit finds sanction in our LSA-Civil Code, especially under articles 2293 and 2294, wherein recovery may be had upon an obligation implied in law for services which redound to the benefit of one where there is no agreement which has *685 the dignity of a contract. It follows, however, that before the action can succeed it is incumbent upon plaintiff to show that there is an equitable reason for recovery and the services so rendered have inured to the benefit of the one for whom performed. It has repeatedly been held that where the services are not to the advantage of the defendant the latter cannot be held. See Biedenharn v. Waters, 1930, 169 La. 1006, 126 So. 508; Granger v. Fontenot, La.App.1941, 3 So.2d 215; Levey v. Levenson, La.App.1947, 30 So.2d 158; Willis v. Mills Tooke Properties, Inc., La.App.1949, 42 So.2d 548."
The Supreme Court granted writs of certiorari to review the refusal of the Court of Appeal, Second Circuit, to consider relator's application for a rehearing and ordered that Court to consider relator's application, 228 La. 634, 83 So.2d 654. Whereupon, the Court of Appeal, Second Circuit, gave consideration to the application and denied a rehearing January 9, 1956.
The case under consideration does not present an issue where the Defendant gave Plaintiff carte blanche to draft a set of plans and specifications for him in consequence of which Plaintiff would be entitled under the quantum meruit to the fixation of his fee based on the value of the services rendered; to the contrary, the facts show positively that the Defendant attempted to ascertain the charges to be made by Plaintiff for his services and the misunderstanding between the parties results from their failure to be in accord as to their agreement for such charges. Therefore, in giving application to the articles of the Civil Code, supra, we are enjoined, as best we can, to give consideration to the equities existing in favor of both parties. Concededly, the plans and specifications for the two-story building by themselves were of no value to Defendant and the value attached thereto only when Plaintiff utilized same together with additional work to prepare plans for the one-story building which was completed.
In our opinion an allowance of 4½ per cent of the cost of such completed building, plus $180 for changing the two-story building plans to conform to the one-story building results in an equitable resolution of the issues involved. This is what the Trial Court allowed.
For these reasons, the judgment of the Trial Court is affirmed.
Affirmed.