180 So.2d 700

**LOUISIANA STATE MINERAL BOARD**

v.

**Shirley E. ALBARADO et al.**

No. 47757.

Dec. 13, 1965.

Paul C. Tate, Tate & Tate, Mamou, John E. Jackson, Baldwin J. Allen and John E. Jackson, Jr., New Orleans, for intervenors-appellants.

Charles C. Jaubert, Lake Charles, Plough, Jumonville & Mulla, Moreau J. Jumonville,

New Orleans, Clarence E. Strauch, Metairie, James A. Bowes, Harvey, for respondents.

HAMLIN, Justice:

In the exercise of our supervisory jurisdiction (Art. VII, Sec. 11, La.Const. of 1921), we directed Certiorari to the Court of Appeal, Fourth Circuit, in order that we might review its judgment insofar as it applies to the demands of Ulysses Pierrottie.[1] 173 So.2d 5.

This suit is one of many in protracted litigation, which has been previously reported; therefore, only those facts necessary for a determination of the present proceeding will be stated.

On November 7, 1955, in the case of Dugas v. Powell, 228 La. 748, 84 So.2d 177 (rehearing denied December 12, 1955), this Court recognized the heirs (collateral heirs) of Francois Zenon Boutte to be the owners of a certain tract of land, comprising approximately 400 acres on Barataria Island in Jefferson Parish. The Louisiana State Mineral Board, pursuant to LSA–R.S. 30:181, now repealed by Act 358 of 1960, then granted an oil, gas and mineral lease to The California Company on February 24, 1960. The lease allegedly covered some 253 acres of the Boutte Tract.

Thereafter, on June 26, 1962, the Louisiana State Mineral Board instituted the present concursus proceeding. It alleged that it had received $103,753.67 as a bonus for the lease, had accumulated interest in the amount of $2,997.11, and believed that it would continue to receive royalties from the lease. It prayed that $106,150.57 be accepted and ordered placed in the Registry of the Court; that it be relieved of all liability, present and future, to defendants and all other persons; that attorneys be appointed to represent non-residents and absentees; and, that certain enumerated persons be cited. Approximately ten persons, including Relator, Ulysses Pierrottie, intervened in this concursus proceeding. They asserted money demands for services performed and monies advanced in the litigation as well as the securing of the instant lease with The California Company.

The trial court recognized approximately 1,830 persons as heirs of Francois Zenon Boutte and fixed the proportionate interest of each in the Estate[2] (Ulysses Pierrottie was recognized as an heir of an infinitesimal proportion). No appeal was taken from that part of the judgment. The trial court rejected the interventions, holding that its judgment should in no wise or manner affect or impair the rights of the

1. A number of other parties were similarly affected by the judgment of the Court of Appeal. They did not apply for Certiorari; hence, we shall only consider the application of Relator, Ulysses Pierrottie.

2. The Court of Appeal, 173 So.2d 5, 8, states, "Some of these interests, computed on the basis of $100,000.00, are as little as 11 cents and relatively few exceed $100.00. * * *"

parties thereto under any existing assignment of interest, power of attorney, or attorney-client contract. It further held that the rights and obligations resulting from private instruments were reserved to the contracting parties in whose favor they enured.

On appeal by Intervenors, the Court of Appeal reversed the judgment of the trial court with regard to the intervention of Alvin A. Cobb. It affirmed the judgment in all other respects.

Herein, Relator contends that the Court of Appeal erred as follows:

1. In failing to apply civilian concepts of quasi-contract or quantum meruit to the claim of Ulysses Pierrottie, so as to avoid his unjust impoverishment and the unjust enrichment of the recipients of the proceeds of the fund involved herein.

2. In failing to adjudicate all claims against the fund, without due consideration of the "practical impossibility" of having these claims adjudicated in any other proceeding.

In his petition of intervention, Ulysses Pierrottie alleged in part the following:

"* * * that Ulysses Pierrotti, for himself and for Felix Pierrotti, desires to file a claim against the monies deposited herewith other than as heirs, for the hereinafter following reasons and expenses as agent for the heirs of Francois Zeno Boutte in the sum of FORTY-SEVEN THOUSAND ONE HUNDRED SEVENTY-EIGHT AND 64/100 ($47,178.64) DOLLARS for Ulysse Pierrotti and for his employee and heir, Felix Pierrotti, in the sum of FOUR THOUSAND AND NO/100 ($4,000.00) DOLLARS.

"That Ulysses Pierrotti successfully recovered the property under lease by the Louisiana State Mineral Board in the suit of Noemie Judice Dugas et al v. Edgar H. Powell et al * * * and that he has already dispersed oil lease funds and trapping funds to the heirs of Francois Zenon Boutte.

"That your petitioner, Ulysses Pierrotti, has spent funds traveling, secretarial help, attorney's fees, and other necessary expenses to recover land in the above suit and is entitled to compensation for such work, expenses, expended by Ulysses Pierrotti."

In rejecting the above intervention, the trial court stated in its reasons for judgment the following:

"Separate interventions were filed by Ulysses Pierrottie * * * to be compensated for personal services rendered in behalf of all the heirs of Francois Zenon Boutte during a period of thirty (30) years. After carefully considering the evidence presented, the Court is of the opinion that initially these inter-

venors expended time and effort in developing the heirship of Francois Zenon Boutte, in order to solicit remunerative contracts of mandate from these heirs to act as their agents in connection with the Estate. The services rendered in this respect were for the personal financial benefit of these intervenors and were not performed with the intent of assisting all of the heirs. The fulfillment of a contractual obligation under an agency agreement, which may indirectly benefit persons who are not parties to the contract, does not render these third parties proportionately liable for the value of such service.

"It is conceded that these Intervenors may, with justification, claim that *their efforts were the primary impetus which ultimately caused the estate of Francois Zenon Boutte to be recognized as the owner of the property;* however, they were motivated by the compensation to be paid them, as stipulated in their Power of Attorney Contracts. There has been presented no evidence to sustain the conclusion that these agents ever acted other than in their fiduciary capacity, nor does the record reflect any action taken by them to assist all of the heirs in having their rights of inheritance recognized.

"It is indeed difficult, if not impos-sible, to draw the distinction between the services rendered by the agents in fulfillment of their contractual obligations, as opposed to those exerted solely to assist all of the heirs, without regards being had for any existing contract. This is particularly true when the protracted period of thirty years litigation, involving 2000 heirs, is taken into consideration, as exists in the instant case. A mere indirect or incidental benefit to a third person attributable to the fulfillment of a contract, to which he is not a party and has not knowingly accepted or ratified, is insufficient to render him legally responsible for its value. The Court, therefore, concludes that these intervenors have failed to sustain the burden of proof required to invoke the application of the unjust enrichment doctrine, and their claims are rejected." (Emphasis ours.)

The Court of Appeal held that none of the Intervenors could qualify under the so-called "fund" doctrine, In re Interstate Trust & Banking Co., 235 La. 825, 106 So.2d 276. In speaking of Ulysses Pierrottie's demand to recover in contract or quasi contract on quantum meruit, it stated: "Obviously Mr. Pierrottie has not alleged nor does he claim to hold an assignment of interest in the land or the fund and has not shown a right to participate as an intervenor in the concursus proceeding. The judgment rejecting his intervention but re-

serving his rights under private contract or power of attorney is correct and must be affirmed."

Counsel for Ulysses Pierrottie, in brief and in oral argument, submit that a token allowance of expenses would be acceptable. This accession is made because of the difficulty of proof of their claim.[3]

The evidence of record reflects that at the time of trial, Ulysses Pierrottie was seventy-nine years of age. He stated that he began the performance of his services for the Boutte Heirs in 1930; we gather that the services consisted in substantial part of making up a family tree of the Boutte Heirs and renewing it from year to year. Testimony to this effect is corroborated by some of the Boutte Heirs— witnesses of record. Relator testified that he traveled through seven states in which he checked marriage certificates and birth records. Pierrottie's services were initially provoked by the desire of an oil company to develop an oil field on the Boutte acreage.

Included in the evidence of record are two Powers of Attorney given to Ulysses Pierrottie by several hundred Boutte Heirs; the original, dated November 10, 1938, is supplemented by the second which gives Pierrottie the right to grant oil, gas and mineral leases.[4]

3. In brief, counsel states:—"Counsel readily admits that the valuation of the services rendered by Mr. Pierrottie—or more properly speaking the valuation of the benefit derived by the heirs therefrom —is difficult. The difficulty is increased by the fact that, theoretically at any rate, the Court does not have before it the question of determining the interest of the various claimants like Mr. Pierrottie in the lands from which the fund on deposit was derived. On this point, Mr. Pierrottie can do little but throw himself upon the mercy of the Court and abide by any reasonable determination made. We do, however, respectfully suggest that the Court give consideration to the possibility of assigning a fixed percentage to all claimants, including Mr. Pierrottie (assuming they are entitled to any) of the property and therefore of the fund, once and for all, and—in addition thereto—that the Court reimburse Mr. Pierrottie the expense incurred by him on behalf of all the heirs. Considering Mr. Pierrottie's contract at page 537 of the record, apparently contemplating a payment by him to attorneys on behalf of the heirs not in excess of 10%, we respectfully submit that a determination that Mr. Pierrottie is entitled to 10% of the present fund and of all funds subsequently realized would be just and equitable and within the intendment of the parties. If the matter were placed on this basis, we submit that a token allowance of expenses to Mr. Pierrottie in the amount of approximately TEN THOUSAND AND NO/100 ($10,000.00) DOLLARS would be justified by the evidence in the record. Thus Mr. Pierrottie would realize from the present proceedings approximately TWENTY THOUSAND AND NO/100 ($20,000.00) DOLLARS, less than half of his own valuation of his interest and expenses. Since the fund on deposit represents only the bonus under a mineral lease on a substantial parcel of land, Mr. Pierrottie would have to look to further revenues from the property for the recovery of the balance of his demand."

4. " * * * we the undersigned heirs of Antoine Boutte, Sr. and or Louise Hy-

A $9,000.00 trapping lease was executed, and The California Company advanced a $10,000.00 bonus for the potential securing of an oil, gas and mineral lease. Of the

acinthe Boutte, Antoine Hilaire Boutte, Modeste Boutte, Louis Hilaire Boutte, Francois Zenon Boutte, Juan Leon Boutte, Celestina Boutte, have made, constituted and appointed, and by these presents do make constitute and appoint (Ulysses Pierrotti and Felix Pierrotti), the true and lawful attorneys for us, and in our names, place and stead, to conduct an investigation of the title of land emanating from whatever sources to, Antoine Boutte and or Francois Zenon Boutte, and particularly the title of land emanating from the Spanish Government, confirmed by an act of congress to Francois Zenon Boutte, from whom Louise Hyacinthe Boutte, Antoine Hilaire Boutte, Modeste Boutte, Louis Hilaire Boutte, Juan Leon Boutte and Celestina Boutte, inherited as brothers and sisters; and to recover whatever property may have been left by the said Antoine Boutte, Sr., and or Francois Zenon Boutte at their death, and especially to recover the property left by the said Francois Zenon Boutte, emanating from the patents issued by the Federal Government, which patents is of record, and to institute and prosecute suits to obtain said property and to institute and prosecute suits for the partition of said property and to proceed to the sale and disposition of the property forming the succession, or any single piece, part or portion of the said property, either at private or public sale, at auction or otherwise, and to fix the terms and conditions of such a sale, and to receive the price and to pay the debts charges and expenses of said succession; to employ counsel, if necessary and to appear in court to prosecute or defend as occasion may require; to take all steps or requisite for the partition or division of the property, real, personal or mixed, and effects of the succession of said deceased; to employ counsel if necessary, and to pay counsel not to exceed 10% of the amount each of us recovers from the said succession.

"IT IS UNDERSTOOD, that a contract already exists employing attorneys for the prosecution of this estate; that said attorneys, already holds a contract of 33⅓% of whatsoever amount they recover; that there exists another contract of 6⅔% for the real estate firm who gathered up the family tree; and that, therefore, the authorization given by this document to our attorneys Ulysses Pierrotti and Felix Pierrotti, to hire counsel and to pay 10% on a contingent base of the amount of the property recovered, means 10% of the whole, before the 40% already contracted, before the existence of this document, is removed from the whole amount recovered in said succession.

"We the undersigned heirs of the said Antoine Boutte and or Francois Zenon Boutte, further give and grant unto the said attorneys, Ulysses Pierrotti and Felix Pierrotti, full power and authorization, to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as we might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that the said attorneys or their substitute shall lawfully do or cause to be done by virtue hereof." First Power of Attorney, dated November 10, 1938.

"We the undersigned heirs of Francois Zennon Boutte declare that on November 10, 1938, we granted a Power of Attorney to Ulysse Pierrottie and Felix Pierrottie; * * *

"That suit has been instituted and judgment has been obtained, placing the heirs of Francois Zennon Boutte into possession of the following described property, two-wit:
" * * * * * *

"That we, the undersigned, desire to amend the Power of Attorney granted to the said Ulysse Pierrottie and Felix Pierrottie on November 10, 1938, by giving to said parties the additional power and

amounts received, Herman Guillory, attorney for Pierrottie, was paid $6,000.00 for his expenses; the remainder was distributed among a number of the Boutte Heirs. Pierrottie traveled extensively to make the distribution. He stated that except for $300.00 advanced to him by Mr. Guillory's daughter, he never received any expense money; he did not keep accurate records and stated that some of his receipts were stolen. All in all, Pierrottie calculated that he actually spent $47,178.64. He testified:

> "Q. I am somewhat confused, and I hope the Court isn't confused. You particularly itemized the cost of your expenses to be $47,178.64. Now, can you tell me how you arrived at that exact expense?
>
> "A. By the amount of money that was spent and the amount of time that I spent and the amount of travelling, wearing out of four different cars and so on."

The record contains an account by Ulysses Pierrottie, which sets forth the time

right to grant oil, gas, and mineral leases, covering and affecting the above-described property on terms and conditions and for considerations to be decided by them and to do any and all acts necessary in the premises. There is also given to the said Ulysse Pierrottie and Felix Pierrottie the additional right to execute any lease of any nature whatsoever, including trapping leases for the terms and conditions and for the considerations to be decided by them." The

traveled by him, the amounts advanced for expenses, the miles traveled, the persons seen, and the purposes for which the many trips were taken. It is not in chronological order, nor is it summarized, but it reflects his activities, services and efforts for more than thirty years—all done for the Boutte Heirs. The substance of Pierrottie's testimony with respect to what he expected to receive is that he hoped to someday receive royalties.

Pierrottie testified that he, instead of the heirs, filed an application with the Mineral Board to advertise and lease the land and requested that the land be leased for no less than $100,000.00. [5]

Ulysses Pierrottie's present counsel sent a mimeographed inquiry to persons purporting to have signed the Powers of Attorney, supra; this inquiry states in part:

> "Therefore, if you signed the power of attorney and it was your understanding that Messrs. Ulysses and Felix Pierrotti were to be compensated in some reasonable amount when and if

record does not reflect the exact date of this second Power of Attorney.

5. "Q. Now, before this, Mr. Pierrottie, do you know that that lease was granted under the provisions of Act 531 of 1952, under which it is provided where more than five hundred people own a tract of land, any fifty of them can make application for the lease. Do you know that that's the way the lease was advertised?

"A. I don't know; I am not acquainted with that. I made personal agreement with Bonnecarrere."

the property was recovered and funds were available, *you need not reply*.

"On the other hand, *if you deny that you signed,* or *if the above was not then your understanding as to their compensation,* a postal card is enclosed for your reply. * * *"

A number of replies denied any obligation to Ulysses Pierrottie. Some replies stated that the signature on the Powers of Attorney were those of their ancestors; others stated that Pierrottie's work was voluntary, without authority or consent; others stated that the writers had employed their own representatives to handle their claims.

■ We conclude from the evidence of record that Ulysses Pierrottie acted for the benefit of all of the heirs of Francois Zenon Boutte. Insofar as the record reflects, there was no expression of prohibition to his work by any heir when he commenced his undertaking in the early 1930's. The evidence clearly discloses that although Pierrottie was an heir to a minute degree, he did not act purely for his own interest. As stated supra, he only had hopes or expectations of eventually receiving some royalty interests. Without contradiction, the record discloses that Ulysses Pierrottie was instrumental in bringing about the recognition of the heirs of Francois Zenon

Boutte as such; he was also substantially responsible for the heirs' success in the case of Dugas v. Powell, 228 La. 748, 84 So.2d 177; and, he assisted in part in bringing about the present lease of the land to The California Company.

■ The Powers of Attorney granted to Ulysses Pierrottie by a large number of the heirs were not exclusive contracts. He did *not work exclusively for the signers,* nor did he agree to work exclusively for them. Cf. Succession of Kernan, 105 La. 592, 30 So. 239. It is certainly reasonable to assume that those who signed the Powers of Attorney contemplated that Ulysses Pierrottie would be remunerated in some form. "When one renders services beneficial to another, at his request, an implied contract is raised for remuneration. * *" Beall v. Van Bibber, 19 La.Ann. 434. Cf. David v. Southern Import Wine, La.App., 171 So. 180. [6] Those who did not sign the Powers of Attorney were enriched by Pierrottie's work; as owners, they reaped advantages from Pierrottie's services as a whole. Unless they prohibited the work, which they did not, supra, these heirs cannot be enriched without paying some form of remuneration. The law does not allow one to enrich himself at another's expense. Beall v. Van Bibber, supra; Bauman, Inc.

6. "Our conclusion is that, where an attorney is employed to prepare articles of incorporation and the corporation comes into existence as a result of those serv- . . . . . . . . ices, the corporation is bound, as by a quasi contract, for the payment of those services on a fair basis."

v. Tilly, La.App., 185 So. 504. See, 37 TLR 59.

"No one should or can be held responsible for the acts of another done to his prejudice and against his will. But when a man takes upon himself the management of the affairs of another as a friend, not for his own benefit and advantage and not against the will but solely in the interest of another, he is a negotiorum gestor, and where he manages the affairs of the other well, 'equity obliges the owner * * * to comply with the engagements contracted by the manager, in his name.' CC. art. 2299; Woodlief & Legendre v. Moncure, 17 La.Ann. 241." Webre v. Graugnard, 173 La. 653, 138 So. 433.

" * * * For all that is required for an instance of negotiorum gestio is that one person (the gestor) manage, of his own accord, the 'affair' of another (the principal), LSA–Civil Code, Article 2295. * * * " Standard Motor Car Co. v. State Farm Mut. A. Ins. Co., La.App., 97 So.2d 435. See, Police Jury v. Hampton, 5 Mart., N.S., 389.

It is true that a number of the heirs engaged their own representatives and attorneys, but we find that the services of these parties were, in the beginning, supplementary and auxiliary to those of Ulysses Pierrottie.

 We do not find that the trial court and the Court of Appeal were correct in rejecting Pierrottie's claim in its entirety and holding that he had not borne the burden of proving unjust enrichment. We agree that he cannot recover under the "fund" doctrine [7] (In re Interstate Trust & Banking Company, 235 La. 825, 106 So. 2d 276; Louisiana State Mineral Board v. Abadie, La.App., 164 So.2d 159), but we find that he is entitled to some remuneration on the basis of quantum meruit.

"It is true that there can be no recovery on a quantum meruit unless there was a contract either express or implied between the parties, or unless the services rendered by the plaintiff or the use of his property inured to the benefit of the defendant under such circumstances as to imply an obligation to pay for it. Duncan v. Blackman, 3 La.App. 421. But certain obligations are contracted without any agreement, either on the part of the person bound, or of him in whose favor the obligation takes place. C.C. art. 2292. Among this kind of obligation is that arising from a quasi contract.

"Quasi contracts are the lawful and purely voluntary acts of a man from which there results an obligation to

---

7. This is conceded by his counsel.

a third person and sometimes a reciprocal obligation between the parties themselves. Any act from which there results an obligation without any agreement forms a quasi contract. C.C. arts. 2293 and 2294." Granger v. Fontenot, La.App., 3 So.2d 215.

"It must be further conceded that if a party derives any benefit from services rendered by another, the law reasonably implies a promise to pay on the part of the one who has received such benefit, such amount as it is reasonably worth. Such amount is recoverable on the theory of quantum meruit. Recovery is permitted in these circumstances because of the hardship which would result to the person performing the services if there should be withheld from him all compensation whatever for his work, labor and the materials furnished by him." Bouterie v. Carre, La.App., 6 So.2d 218. See, C. E. Evans Company v. Chachere, La.App., 155 So.2d 430; B. F. Edington Drilling Company v. Yearwood, 239 La. 303, 118 So.2d 419.

█ Because of the large number of heirs involved and the length of time this litigation has been pending, it is not feasible to remand this case for the fixing of the separate amounts due by each heir to Ulysses Pierrottie. "In the absence of a contract the compensation due Plaintiff for services rendered to Defendant must be fixed by resorting to equity." Haase v. Brumfield, La.App., 137 So.2d 680. See, Gilmore v. Gasquet, 178 La. 437, 151 So. 763.

█ Ulysses Pierrottie is asking that his fee be fixed at $10,000.00. Under the facts and circumstances of this case, we find that this amount is neither excessive nor unreasonable. In the exercise of our discretion and in the interest of justice, we will fix the amount due him at that sum.

For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, rejecting the intervention of Ulysses Pierrottie, is reversed and set aside. It is now ordered that Ulysses Pierrottie be paid $10,000.00 out of the sum to be distributed to the Heirs of Francois Zenon Boutte from the amount on deposit in the Registry of the Court. Relator's proportionate costs of these proceedings to be paid from the amount on deposit in the Registry of the Court.

HAMITER, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct.

HAWTHORNE, J., dissents.

HAWTHORNE, Justice (dissenting).

In my view the judgment of the Court of Appeal affirming a judgment of the district court which rejected the intervention

of Ulysses Pierrottie, expressly reserving to him all rights under contracts of employment or powers of attorney, should be affirmed.