286 So.2d 480 (1973)
Stanley A. BARON
v.
Mrs. Evelyn BARON, Wife of Theodore PETER.
No. 9453.
Court of Appeal of Louisiana, First Circuit.
November 2, 1973.
Rehearing Denied January 4, 1974.
*481 Julian J. Rodrigue, Rodrigue & Pierson, Covington, for appellant.
Stanley A. Baron, pro se.
Before SARTAIN, BLANCHE and WATSON, JJ.
WATSON, Judge ad hoc.
This is an appeal from a judgment ordering payment of an attorney fee on the basis of quantum meruit for services performed.
The plaintiff-appellee was awarded the sum of $2,500.00 as his quantum meruit attorney's fee plus $41.55, half of certain court costs which he had paid. The defendant-appellant is a cousin to the plaintiff.
The facts of the case are somewhat unusual.
Miss Emily Baron, aunt of the plaintiff, Stanley A. Baron, and of the defendant, Evelyn Baron, wife of Theodore Peter, died on May 6, 1957. Plaintiff, who is an attorney licensed to practice in Louisiana, opened the aunt's succession, completed the proceedings and placed all of the heirs, himself, his brother and his cousin, Evelyn Baron Peter, in possession. It is noteworthy that he did not charge any fee for the succession work to either his brother or to the defendant and that he paid all costs himself.
In May, 1958 two mattresses owned by Mrs. Emily Baron were sold and while they were being worked on at a mattress factory, Gold Certificates in the amount of $22,000.00 were discovered.
A dispute arose as to the ownership of the Gold Certificates. The contending parties were, of course, the heirs of Miss Emily Baron, the mattress factory and the mattress purchasers. The plaintiff-attorney undertook extensive legal proceedings to recover the money on behalf of himself and his co-heirs. These proceedings included very extensive and able legal work, culminating in a trial in the United States District Court and an appeal to the United States Court of Appeal, Fifth Circuit. In his efforts, plaintiff was successful on behalf of himself, his brother and his cousin, the defendant. Plaintiff recovered approximately $5,500.00 for himself, a like amount for his brother and approximately $11,000.00 for the defendant.
Plaintiff also performed the necessary work in connection with the succession to handle the recovery of the money represented by the Gold Certificates.
*482 After all the work was completed and after the defendant had received her money, plaintiff then asked her for a legal fee of $2,500.00, which she declined to pay on the grounds that he had handled the initial succession proceedings without charge; that she had not contracted with him to represent her in recovering the Gold Certificates; that he had never advised her that he was going to charge a fee; and that, if she had hired an attorney, she would have chosen someone other than plaintiff.
On defendant's refusal to pay a fee, plaintiff instituted this suit in August, 1963. For some unexplained reason, he apparently instructed that citation and service be delayed. Defendant was not served until May 7, 1968, the citation having issued on May 2, 1968.
The trial court allowed recovery in the amount of $2,500.00 on the basis of quantum meruit plus the $41.55 court costs. However, the trial court did not allow legal interest from date of judicial demand due to the delay in service. Legal interest was ordered paid only from date of service.
From the adverse judgment, defendant has appealed suspensively.

Exception of No Cause and No Right of Action
In this court the plaintiff-appellee has filed a document styled "Exception of No Cause and No Right of Action." The pleading sets forth generally the appellee's arguments on appeal. Also, appellee makes the contention that on December 14, 1972 (which he states incorrectly to be the date of the rule hearing to fix expert witness fees) the attorney for appellant agreed and stipulated that the appellant would not perfect the appeal if appellee would not answer the appeal.
Appellee is mistaken as to the date of the rule hearing; it was February 16, 1973, as reflected by the minutes of court. The trial on the merits was held on the December 14 date.
Counsel for appellant vigorously denies any such agreement or stipulation at any time concerning abandonment of the appeal.
Certainly an Exception of No Cause and No Right of Action is not a pleading to be filed properly by the plaintiff-appellee, exceptions being defined as a "means of defense, other than a denial or avoidance of the demand, used by the defendant...". C.C.P. art. 921.
If we consider the pleading filed to be a motion to dismiss the appeal, we find nothing in the record to support the contentions made by plaintiff-appellee. There is no stipulation not to perfect the appeal such as he describes. There is no evidence of any acquiescence in the judgment. In fact, on February 16, 1973, the date when Mr. Baron and Mr. Rodrigue appeared in court concerning expert witness fees, and entered a stipulation concerning that feature of the case, the appeal had already been perfected. The appeal bond was filed on February 6, 1973.
Therefore, the pleading, which is styled an exception and which may comprise a motion to dismiss the appeal, is overruled.

Merits
The issue to be decided on the merits of the appeal is whether an attorney who proceeds and makes recovery on behalf of himself and his brother, as heirs, is entitled to collect on a quantum meruit basis from a cousin, also an heir, whose interest he also successfully pursued, but without contract of employment or agreement as to a fee. Our view is that the trial court answered this question incorrectly in the affirmative.
The short answer to the issue and to plaintiff's claim for an attorney fee from defendant is the rule of law found in *483 Louisiana jurisprudence that attorneys employed by certain heirs who recover assets to the benefit of all of the heirs are entitled to be paid only by the persons who employed them and not by all of the heirs. Succession of Kernan, 105 La. 592, 30 So. 239 (1901); Succession of Guichard, 225 La. 315, 72 So.2d 744 (1954).
However, there are three possible theories of recovery by plaintiff which under the facts of the present case must be considered. These are (1) quantum meruit, (2) quasi contract, and (3) the "fund" theory.
As to quantum meruit, we believe there must be a contractual relationship between the parties, either expressed or implied. Under the facts of this case there was clearly no meeting of the minds as to plaintiff's employment. The testimony of the defendant (being cross-examined by plaintiff) is illuminating on this point.
"Q I entered into an agreement with you in connection with this second succession?
A No, I specified that I wanted my own attorney in this second opening of the second succession.
Q Who was your own attorney then?
A Mr. Rodrique.
Q Did Mr. Rodrique participate in the mattress case?
A No, but I wanted him to.
Q Why is it he did not participate?
A Because I stated to you that I wanted my attorney and you said no that you were going to take care of it." (TR. 33).
Plaintiff, in his own testimony confirmed the fact that he did not have a contract of employment with defendant. The pertinent excerpt is as follows:
"Q Mr. Baron, at no time did you ever discuss a contractual fee arrangement with Mrs. Baron with respect to filing the lawsuit on the Gold Certificates, did you?
A In the first succession?
Q No, sir.
A Not in the second succession.
Q With respect to the suit filed to maintain ownership of the Gold Certificates, did you at anytime ever discuss a contract fee arrangement with Mrs. Peter?
A Never any specific amount.
Q Did you ever tell her you were going to charge her?
A No, indeed, I didn't tell her that I was going to charge her." (TR. 46)
The only other party testifying who had any knowledge about the situation was the defendant's husband, and while his testimony cannot be regarded as impartial, it confirms the obvious conclusions implicit in the testimony of the defendant and the plaintiff concerning the possible employment of counsel. Theodore Peter testified as follows:
"Q There was no discussion between Mrs. Peter and him about anybody else being employed to represent her?
A She said about having you to represent her if he needed any help or anything.
Q What did Stanley say?
A He said he didn't need anybody, didn't want anybody.
Q Did he tell her at that time he was going to charge her anything to represent her?
A No." (TR. 71072)
On the basis of the testimony and other evidence in the record, we conclude that there was no employment contract, either expressed or implied, between *484 plaintiff and defendant. It is settled that an attorney cannot collect a fee from one who did not employ him, no matter how valuable his services. Marx v. Sutton, 176 So. 883 (La.App.Or.1939). Therefore, plaintiff cannot recover on the basis of quantum meruit.
The second possible theory of recovery from plaintiff is under quasi contract. LSA-C.C. art. 2292 et seq. Louisiana State Mineral Board v. Albarado, 248 La. 551, 180 So.2d 700 (1965). We do not believe that the plaintiff, as an attorney at law, can claim the advantages which might be his as a negotiorium gestor under the Civil Code Articles, unless there are some peculiar or unusual circumstances which would justify finding a quasi contract between the parties. It is obvious that if attorneys at law were to undertake the management of other people's affairs without their knowledge or authorization, they would be guilty of gross solicitation. It is also significant, in our opinion, that plaintiff was pursuing his own interests in prosecuting the claim on the Gold Certificates; he performed no additional legal work on his cousin's claim. Therefore, we do not believe that a quasi contract arose between plaintiff and defendant.
The third possible theory of plaintiff's claim is the so-called "fund" theory. This is a common law theory which holds that one who creates a fund from which other people benefit is entitled to be paid for his services in the creation of this fund. This theory has been applied rarely and reluctantly in Louisiana. In re Interstate Trust and Banking Company, 235 La. 825, 106 So.2d 276 (1958). The present case would not fall under the "fund" doctrine because the plaintiff did not create a fund; he merely secured judicial recognition of the ownership by the succession of an asset already owned by it.
Therefore, we do not find that the plaintiff is entitled to recover from defendant for legal services under any of the possible theories of law discussed. With reluctance, we must therefore reverse the trial court and order that plaintiff's suit be dismissed, all costs to be paid by plaintiff-appellee.
We note the improper allowance of certain court costs by the trial court. The appeal bond was filed in these proceedings on February 6, 1973, thus perfecting the appeal and divesting the trial court of jurisdiction except for certain limited purposes. C.C.P. art. 2088, as amended. Taxing costs is not within the authority of the trial court after the appeal is perfected. Therefore, the judgment entered on February 16, 1973 by the Twenty-Second Judicial District Court, purporting to fix expert witness fees of two attorneys called in these proceedings, was entered at a time when the trial court lacked jurisdiction. Accordingly, it is set aside.
Reversed.