DOMENGEAUX, Judge.
This is a suit for attorney’s fees wherein plaintiffs, Jake Shapiro and Morris Shapiro, who formerly comprised the partnership of Shapiro and Shapiro, Attorneys at Law, seek recovery of the sum of $4,500.00 allegedly due them by defendant, Alexander H. Waiss, for legal services rendered to him.
In mid-1970, defendant, who was in control of a family corporation known as Aal-ma Enterprises, Inc., sought the services of plaintiffs to protect him from an impending financial setback. Aalma Enterprises, Inc. had loaned Robin L. Thibodeaux and Bertrand Thibodeaux, relatives of defendant, approximately $33,000.00, and had se *164 cured the loan by a second mortgage on a large parcel of land situated in the Parish of Rapides, Louisiana. The Federal Land Bank Association of Alexandria, Louisiana, held a first mortgage on the same land, on which there was an indebtedness of some $90,000.00, and was threatening to foreclose on its mortgage due to the failure of the Thibodeauxs to make their payments thereon. Such a foreclosure could have caused defendant’s family corporation 'to suffer a loss by virtue of its inferior hy-pothecation.
Plaintiffs determined that the solution to the situation was to foreclose on the second mortgage, the one held by Aalma Enterprises, Inc., and have the defendant buy the land at the Sheriff’s sale and assume the first mortgage in favor of the Federal Land Bank Association. Plaintiffs, primarily through Jake Shapiro, in fact embarked upon a course of action designed to effectuate that end, which they pursued to its conclusion. Besides the filing and prosecution of the foreclosure suit, there was involved the matter of persuading the Federal Land Bank Association to permit defendant to foreclose and to assume the first mortgage, as well as a number of conferences with real estate dealers and with defendant.
When the matter was concluded plaintiffs sent defendant a statement for the services rendered in the amount of $5,788.-32. Defendant did not pay the bill rendered and let it be known, in a generally indirect manner, that he was dissatisfied with the amount charged, as he considered it to be excessive. He so informed plaintiff Morris Shapiro who in turn spoke to his coplaintiff regarding the possibility of reducing the fee. The plaintiffs testified that because of their long-standing friendship with defendant they decided to reduce the fee to an even $5,000.00, in the hopes that such a reduction would satisfy him. Defendant paid plaintiffs the sum of $500.-00 and then failed to make any further payments. Accordingly plaintiffs filed suit for the remaining $4,500.00 allegedly due them. Trial was had on the merits, following which the District Court awarded plaintiffs the sum of $1,500.00, subject to a credit in the amount of $500.00 representing the payment already made by defendant. Plaintiffs then appealed to this court and defendant answered the appeal asking that the amount awarded by the District Court be reduced to the sum of $750.00, subject to a credit of $500.00, and that as thus reduced the judgment of the District Court be affirmed.
Plaintiffs’ case is based primarily on contract and in the alternative on quantum meruit. The law is clear that a knowledgeable, valid consent is essential to the formation of any contract. LSA Civil Code Articles 1779, 1798, 1800, 1819. Putting it another way, there must be a meeting of the minds on the object of the contract. The question of whether a contract was ever confected in this case, then, is purely one of fact, i. e. did defendant or did he not give his valid consent to the fee that was to be charged? It is our opinion that the trial judge, who saw and heard these witnesses testify, was in a far better position than are we to determine this factual question. We therefore shall not disturb his conclusion that no contract was ever confected between plaintiffs and defendant on the matter of the attorneys’ fees to be charged, and we turn now to a consideration of the quantum meruit aspect of the case.
The factors to be considered in the setting of attorney’s fees have frequently formed the subject matter of judicial opinions. A good example is to be found in the case of In Re Lomm, La.App., 195 So.2d 416, writ refused 250 La. 541, 197 So.2d 81, wherein we find the following:
“There are many factors which enter into the fixing of an attorney’s fee, no specific formula exists for such a determination, and each case rests on its own facts. Generally the considerations are: the responsibility incurred including the importance of the litigation; the extent *165 and nature of the work performed; the success of the litigation; and the legal knowledge, experience and skill of counsel.”
There is no question regarding the responsibility incurred, the importance of the litigation, or the legal knowledge, experience and skill of counsel, as all of these are evidently of substantial magnitude. Likewise the benefits derived by defendant were shown to be as favorable as could be expected under the circumstances prevailing at the time that he retained plaintiffs. This leaves only the extent and nature of the work performed for our consideration. On that subject we have the testimony of plaintiff, Jake Shapiro, who performed all of the work on this case, that he spent approximately IS hours working on defendant’s behalf and that additionally defendant visited him in the office some 20 times and called him on the telephone another IS or 20 times. Defendant denied that he had been to plaintiffs’ office on such a high number of occasions, and testified that many of his visits to that office had nothing to do with the legal matters being handled by plaintiffs, but rather were more of a social nature inasmuch as he and plaintiffs were all members of the same fraternal organizations.
Here again, then, we have conflicting testimony, which conflict was augmented by the discrepancies in the expert testimony. Two expert attorneys testified for plaintiffs and two expert attorneys testified for the defendant, with those testifying for each said offering highly divergent opinions regarding the value of plaintiffs’ services. Thus the plaintiffs’ experts were of the opinion that the fees charged were reasonable while the defendant’s experts were of the opinion that a reasonable fee would have lain somewhere between $750.-00 and $1,000.00.
Considering all factors of this case, and particularly the successful efforts of plaintiffs in averting the impending financial reversal which defendant unquestionably faced, we feel that plaintiffs are entitled to a fee of $3,000.00 for their services.
For the above and foregoing reasons, the judgment of the district court is amended so as to increase the award of attorney’s fees to the sum of $3,000.00, and as so amended, it is affirmed.
Amended and affirmed.