321 So.2d 17 (1975)
OIL PURCHASERS, INC., Plaintiff,
v.
W. J. KUEHLING et al., Defendants.
No. 5112.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1975.
Rehearing Denied November 13, 1975.
Writ Granted January 9, 1976.
*19 Robert M. Cordell and Charles Wooten, Lafayette, for plaintiff-appellant.
James R. Murrell, III, New Orleans, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
This is a concursus proceeding invoked by Oil Purchasers, Inc. to determine the ownership of certain oil royalties deposited in the registry of the court. During the course of the litigation, the heirs of one of the cited claimants, Albert J. Lequeux, filed a rule seeking to rescind and cancel from the record the contingent fee contract their father had entered into with attorney Edward F. LeBlanc, due to Mr. LeBlanc's death. Alternatively, they prayed that the fee be awarded only in quantum meruit for the work performed by Mr. LeBlanc before his death. The trial court, finding that Mr. LeBlanc had completed substantially all of the work which he had contracted to perform, awarded his widow and heirs 20% of all land, monies and other interests received by the Lequeux heirs, instead of the 25% provided by the contingent fee contract. The Lequeux heirs appealed.
The issues for our determination are: (1) Do we have before us on appeal the exceptions of res judicata, no right of action and prescription filed by the defendants-in-rule, appellees, where the exceptions were without objection referred by the court to the merits but no ruling was made on them? (2) Did the trial court err in finding as a fact that before his death LeBlanc had performed substantial services justifying the award in quantum meruit? (3) May any portion of the award in quantum meruit be made in land?
This appeal is the culmination of lengthy litigation. In October of 1960, Oil Purchasers, Inc. instituted this concursus proceeding naming many claimants to the oil royalties deposited and to be deposited in the court. Among the claimants named were the heirs of Mathurin Lequeux.
Mr. Lequeux left two groups of heirs, hereinafter referred to as the "French heirs" and the "American heirs." He originally lived in France, where, as a result of his first marriage, he fathered the French heirs. After the death of his first wife, he moved to Louisiana where he remarried and fathered the American heirs.
Albert Jean Lequeux was one of the American heirs of Mathurin Lequeux. He claimed one-half of Mathurin Lequeux's interest in the property. The other American heirs, including W. J. Kuehling, hereinafter referred to as the Kuehling group, claimed the remaining half. The French heirs claimed 11/27ths of Mathurin Lequeux's *20 interest. The State of Louisiana and Humble Oil Corporation also claimed interests in the property.
On August 7, 1961, Mr. Albert J. Lequeux entered into a contingent fee contract with attorney Edward F. LeBlanc to represent him in his claim to the property. Under the contract, LeBlanc's fee was 25% of all rights or interests owned by Albert J. Lequeux in the property. Mr. LeBlanc obtained similar contracts to represent the other American heirs, i.e., the Kuehling group.
Albert J. Lequeux became dissatisfied with the way LeBlanc was handling his claim. In September of 1963 Lequeux filed suit against LeBlanc to cancel the contingent fee contract. This suit ended in a compromise judgment dated June 24, 1964 which recognized the right of Mr. LeBlanc to continue to represent Albert J. Lequeux under the contingent fee contract of 1961.
Subsequently, Mr. LeBlanc negotiated an agreement with the State and Humble Oil Corporation. On January 11, 1965, a consent judgment was rendered which granted to the State and Humble Oil Corporation 50% of all of the property formerly owned by Mathurin Lequeux. That judgment awarded the other 50% of the property to the American heirs (Albert J. Lequeux and the Kuehling group) and their attorney, Mr. LeBlanc. However, the judgment reserved to the French heirs the right to assert their claim against the American heirs to the 11/27ths. Mr. LeBlanc, as a result of this compromise agreement, received certain interests in the land and a portion of the funds on deposit. The only funds remaining in escrow at this point were those adversely claimed by the French heirs.
In 1961, attorneys for the French heirs had proposed a settlement to terminate the controversy. That proposal provided that the French heirs would disclaim all interest in the "Highland property", and that the "Lowland property" and the escrow fund would be split with 70% being distributed to the American heirs and the remaining 30% to the French heirs. After several years had passed, this agreement was accepted by the Kuehling group of the American heirs but not by the Lequeuxs. Thus the dispute as to the 11/27ths claimed by the French heirs and reserved to them in the 1965 judgment, ended as to the Kuehling group. However, the controversy continued as to the ownership of the half claimed by the Lequeuxs.
Albert J. Lequeux died in 1964, leaving as his heirs Clyde and Malcolm Lequeux, the present plaintiffs-in-rule appellants. Mr. LeBlanc died on March 23, 1969.
After Edward LeBlanc died, Clyde and Malcolm Lequeux employed Charles N. Wooten as their attorney. He negotiated a compromise with the French heirs. This settlement, dated August 1, 1974, provided that the Lequeuxs receive all of the land involved and that the remaining funds in escrow be split, with 50% to the Lequeuxs and the other 50% to the French heirs.
Meanwhile, in January of 1974, appellants had filed the present rule to show cause to cancel the LeBlanc contract.
THE EXCEPTIONS
The widow and heirs of LeBlanc filed in the district court exceptions of res judicata, no right of action and prescription to the present rule to show cause. At the beginning of the hearing on the rule, these exceptions were without objection referred by the court to the merits. However, the exceptions were not decided by the district judge, and there was no request made by defendants-in-rule that the district judge rule on them.
The defendants-in-rule have not appealed or answered the appeal, but in their supplemental brief filed in this court they re-urge the exceptions. Our jurisprudence has established the rule that where a party who has filed exceptions in the district court does not insist upon a trial of *21 and a ruling on his exceptions, they are considered waived, and need not be considered by the Court of Appellate review. Quinette v. Delhommer, 247 La. 1121, 176 So.2d 399 (1965); Louisiana Power & Light Company v. City of Houma, 229 So.2d 202 (La.App., 1st. Cir. 1969); Perry v. Perry, 122 So.2d 829 (La.App., 1st Cir. 1960). Under these authorities, the exceptions are not properly before us on appeal. We therefore do not consider the judgments of June 19, 1964 and January 11, 1965 which recognized LeBlanc's contract and interest in the property.
The present case is distinguished from State v. Placid Oil Company, 274 So.2d 402 (La.App., 1st Cir. 1973) and the cases relied on there. In those cases, the district judge overruled defendant's exceptions, and the appellate courts held the defendant-appellee could re-urge the exceptions on appeal without appealing or answering the appeal. We express no opinion as to the correctness of those cases. But, the present matter is distinguished, since here there was no ruling by the district court on the exceptions and no request for such a ruling.
TRIAL COURT'S AWARD
The next issue is whether the trial court was correct in its determination that a fair fee for the services rendered by Mr. LeBlanc is 20% of all lands, monies, rights, titles or interests recovered by Albert J. Lequeux, or his heirs. The contract provided a fee of 25%.
It is clear that an attorney's fee may be provided by contract, or in the absence of a contract, may be determined by application of the doctrine of quantum meruit. Johnson v. Iowa Rice Drier, Inc., 226 So.2d 194 (La.App., 3rd Cir. 1969). And this dichotomy has been held applicable where there is no contract, Nugent v. Downs, 230 So.2d 597 (La.App., 3rd Cir. 1970), the contract is revoked, Barranger, Barranger & Jones v. Gaines, 286 So.2d 474 (La.App., 1st Cir. 1974); Wright v. Fontana, 290 So.2d 449 (La.App., 2d Cir. 1974); Kramer v. Graham, 272 So.2d 716 (La.App., 3rd Cir. 1973), or where the attorney is discharged, Guilbeau v. Firemen's Fund Insurance Company, 293 So.2d 216 (La.App., 3rd Cir. 1974); Kramer v. Graham, supra.
We believe the reasoning of these decisions applies equally in the situation where an attorney dies during the course of his representation. This follows from the rationale for the decisions above which is that upon premature termination of his employment, an attorney is entitled to the reasonable value of his services. Other jurisdictions have applied the rule where an attorney died. In 7 Am.Jur.2d 225 (Attorneys at Law), it is stated:
"Where the disability or death of an attorney employed on a contingent basis occurs before a final adjudication or settlement of a case, he or his estate may recover the reasonable value of his services.. . ."
We conclude, therefore, that it should make no difference whether the contract is non-existent, revoked, terminated because the attorney is discharged or terminated by the death of the attorney. In any of these situations, the doctrine of quantum meruit is applicable in the determination of an attorney's fee.
Quantum meruit is an equitable remedy based on the concept that no one who benefits by the labor and materials of another should be unjustly enriched thereby. Jones v. City of Lake Charles, 295 So.2d 914 (La.App., 3rd Cir. 1974); Louisiana State Mineral Board v. Albarado, 248 La. 551, 180 So.2d 700 (1965). See also LSA-C.C. Articles 2292-2294 and 1964, 1965, and Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). Because it derives from the principle of unjust enrichment, the recovery allowed is the value of the services or materials *22 which have inured to the benefit of another. North Development Company, Inc. v. McLure, 276 So.2d 395 (La.App., 2d Cir. 1973). And while there is no definite test to determine an appropriate award in quantum meruit, a plaintiff should recover that which he reasonably deserves for the services he has performed. Jones v. City of Lake Charles, supra; Herman v. Jambois, 205 So.2d 63 (La.App., 4th Cir. 1967).
Although the results obtained by applying the general rule as stated above should depend on the circumstances of each individual case, North Development Company v. McLure, supra; Herman v. Jambois, supra, over the years our jurisprudence has come to recognize certain factors to be important guides in the determination of an award in quantum meruit. In Ezernack v. Chief Motor Company, 240 So.2d 417 (La.App., 3rd Cir. 1970), we held that these factors include the amount involved and the degree of skill and volume of work necessarily performed by the attorney. In addition to these, the value of the services performed, the responsibility incurred by the attorney, the character and importance of the issues involved in the particular case, knowledge, learning, ability, reputation, attainment and experience of the attorney, the success obtained, and the time required to perform the services have all been important. See In Re Interstate Trust and Banking Company, 235 La. 825, 106 So.2d 276 (1958); Baghramain v. M.F.A. Mutual Insurance Co., 315 So.2d 849 (La.App., 3rd Cir. 1975); Succession of Butler, 281 So.2d 189 (La.App., 4th Cir. 1973); Jones v. City of Lake Charles, supra; Succession of Gilmore, 239 So.2d 462 (La.App., 4th Cir. 1970); Herman v. Jambois, supra; Clark v. American Marine Corporation, 320 F.Supp. 709 (E.Dist. of La.1970).
In addition, it was held in Clark v. American Marine Corporation, supra, that the customary charges of lawyers for similar services, and whether other employment was lost by the undertaking, are important considerations. That case also held that the terms of the employment contract may be relevant in the determination.
Plaintiffs-in-rule urge this Court that Mr. LeBlanc did not perform services sufficient to justify the trial court's award. However, applying the rules and factors we have outlined above, we are compelled to disagree. In addition to the answer and other pleadings filed by Mr. LeBlanc in the trial record of this matter, his work files, which were introduced into evidence in the trial of the present rule, indicate Mr. LeBlanc was current in his work. These files of Mr. LeBlanc are voluminous, consisting of five overfilled manila folders, which total about five and one-half inches in thickness.
It is true, as appellants argue, that these files are partially composed of the workproduct of other attorneys. However, it is equally apparent that there are adequate documents contained in the files to indicate Mr. LeBlanc did substantial work for his clients. These documents consist for the most part of correspondence to and from Mr. LeBlanc. The letters, considered as a whole, indicate that Mr. LeBlanc was not only actively involved in his clients' interest but was constantly endeavoring to bring about an equitable settlement with the adverse claimants. The letters repeatedly refer to conversations, telephone calls, conferences and other letters, all of which were concerned with the settlement of the claims of Mr. LeBlanc's clients. But even though these letters are indicative of much work and thought by Mr. LeBlanc, we must not forget that they are not the end product of his work, nor a significant part of it. They merely serve to indicate to us what work was actually being performed.
We are cognizant of the testimony contained in the transcript of the trial on the rule that the Lequeuxs were not aware of any work being performed by Mr. LeBlanc, and that they had difficulty in communicating with him. We are also aware of the testimony of Mr. Ed Abel that he *23 was never contacted by Mr. LeBlanc as regards this litigation. However, we believe this testimony is outweighed by the evidence gained from Mr. LeBlanc's work files. These files indicate ciearly that Mr. LeBlanc was actively involved in his clients' cause.
Appellant contends that while these letters may have been written, they actually accomplished nothing because LeBlanc did not complete the case. Whether an attorney completes his case is not the controlling factor. Hargrove, Guyton, VanHook & Ramey v. Blanchard, 216 So.2d 127 (La.App., 2d Cir. 1968). Rather, as we discussed earlier, all factors must be considered.
Similarly, the fact that the ultimate compromise, reached by the Lequeuxs' new attorney after the death of Mr. LeBlanc, differed in final form from that with which Mr. LeBlanc worked is of no consequence. For it is clear from the testimony of Mr. Abel that the ultimate compromise reached was based on the earlier one proposed to Mr. LeBlanc. His efforts toward reaching an agreement on that compromise certainly contributed to the success of the latter one.
In short, we believe the plaintiffs have sustained their burden of proof, though it be a heavy one. Voorhies v. Lomenick, 228 So.2d 509 (La.App., 3rd Cir. 1969). Clearly, we cannot say that the trial judge was manifestly erroneous in his determination of a just and proper fee. A trial judge, in view of his experience at the bar and on the bench, is qualified to determine the reasonable value of an attorney's services, although he would require the assistance of expert testimony in setting the fee of members of other professions. Jones v. Bryant, 283 So.2d 307 (La.App., 4th Cir. 1973); James, Robinson, Felts & Starnes v. Powell, 303 So.2d 229 (La.App., 2d Cir. 1974). This is especially true where the legal services were rendered under the eye of the court, as they were here, and where the court is familiar with the facts upon which the award is made. Herman v. Jambois, supra; Cain v. Employers Casualty Company, 236 La. 1085, 110 So.2d 108 (1959); Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956); Gallagher v. Gallagher, 190 So.2d 916 (La.App., 2d Cir. 1966). Great discretion is left to the trial judge for such a determination, and in the case at bar we find no abuse of that discretion.
AWARD OF LAND IN QUANTUM MERUIT
While we find no error in the trial court's determination of the amount of compensation due Mr. LeBlanc, we must now decide whether any portion of that fee may be awarded in land. We hold that it may not.
It has long been the law of our State that a contingent fee contract may provide that the fee be taken in money or in land. Liverman v. Hungerbeeler, 156 La. 279, 100 So. 425 (1924). However, in the present case the heirs of Mr. LeBlanc cannot recover under the contract because he died without completing it. They can recover only in quantum meruit. Johnson v. Iowa Rice Drier, Inc., supra, and can claim only the reasonable value of his services, Jones v. City of Lake Charles, supra. Because money is the accepted medium of exchange in our society, we think that in the absence of a contract providing for some other form of payment any compensation due another is to be made in money. In Minyard v. Curtis Products, Inc., supra, our Supreme Court stated:
". . . where there is an unjust enrichment of one at the expense or impoverishment of another, then the value of that enrichment, or else in some cases, the amount of the impoverishment must be restituted."
And 7 Am.Jur.2d 225 (Attorneys at Law) provides:
"Where the disability or death of an attorney employed on a contingent basis *24 occurs before a final adjudication or settlement of a case, he or his estate may recover the reasonable value of his services.. . ."
Many other statements of the law of quantum meruit also employ the term "value" in describing the compensation due. See 58 Am.Jur. 3 (Work and Labor); 12 Am.Jur. 347, (Contracts); 12 Am.Jur. 352, (Contracts); 7 Am.Jur.2d 235, (Attorneys at Law); 7 Am.Jur.2d 254, (Attorneys at Law). Without exception, all of the reported Louisiana cases we found have awarded quantum meruit only in money. See, for example, Louisiana State Mineral Board v. Albarado, supra; Succession of Butler, supra; and Shapiro v. Waiss, 284 So.2d 163 (La.App., 3rd Cir. 1973).
We are therefore of the opinion that while the trial court was correct in its determination that the value of Mr. LeBlanc's services was 80% of that which he would have received under the contract (80% of 25% = 20%) no portion of the award in quantum meruit may consist of land or interests other than money.
However, there is no evidence in the record from which we are able to determine the value of the land awarded defendants-in-rule by the trial court. We therefore find it necessary to remand the case to the trial court for the limited purpose of the admission of evidence as to the value of the land, rights, titles or interests, other than money, included in the award to appellees. We think also that equity and fairness require these values be determined as of the date of the death of Mr. LeBlanc on March 23, 1969, since this was the date his services terminated.
For the reasons assigned, the judgment appealed is reversed and set aside. This case is remanded to the district court for the limited admission of evidence of value of the land, rights, titles or interests, other than money, as of March 23, 1969, included in the award to appellees, and for further proceedings and rendition of judgment in accordance with law and the views expressed herein.
Reversed and remanded.