334 So.2d 420 (1976)
OIL PURCHASERS, INC.
v.
W. J. KUEHLING et al.
No. 57241.
Supreme Court of Louisiana.
June 21, 1976.
*421 James R. Murrell, III, New Orleans, for plaintiffs-applicants.
Charles N. Wooten, Ltd., Robert M. Cordell, Lafayette, for defendants-respondents.
DIXON, Justice.
This is a suit by the heirs of Albert Jean Lequeux to rescind or reform a contract of employment entered into by Albert Lequeux and Edward F. LeBlanc, an attorney. A brief history of this litigation is necessary for an understanding of the issues before us in this case.
In October of 1960 Oil Purchasers, Inc. instituted this concursus proceeding, citing many claimants to certain oil royalties already deposited and those to be deposited in the registry of the court. Among the claimants cited were the heirs of Mathurin Lequeux.
Mathurin Lequeux had been twice married, once in France and then in Louisiana. As a result of his marriages he left two groups of heirs, the "French heirs" and the "American heirs."
Albert Jean Lequeux was one of the American heirs of Mathurin Lequeux. He claimed one-half of Mathurin Lequeux's interest in the royalties and subject property. Mathurin Lequeux's other American heirs, including W. J. Kuehling (the "Kuehling group"), claimed the other one-half. The French heirs of Mathurin Lequeux claimed 11/27ths of Mathurin Lequeux's interest. Other claimants to the royalties and property included the State of Louisiana and Humble Oil & Refining Company.
On August 7, 1961 Albert Jean Lequeux entered into a contingent fee contract with Edward F. LeBlanc, attorney, to represent him in his claim to the royalties and property. Under the contract, LeBlanc's fee was to be an undivided 25% interest in whatever property that Albert Lequeux owned that was then, or in the future would be, subject to any claims adverse to Lequeux's asserted ownership. Edward LeBlanc also obtained similar contracts from the Kuehling group.
However, Albert Lequeux, apparently dissatisfied with LeBlanc's handling of his case, filed a separate action in September of 1963 against Mr. LeBlanc to rescind and annul the contingent fee contract. LeBlanc answered and reconvened, praying for recognition of the validity of his contract. This suit was ended by compromise and a judgment was rendered June 25, 1964 which, among other things, recognized LeBlanc's right to continue his representation of Albert Lequeux. This judgment was signed by the trial judge, by Mr. LeBlanc and by Charles Wooten, attorney for Albert Lequeux. No appeal was ever taken from the compromise judgment.
On January 11, 1965 Mr. LeBlanc negotiated a settlement with the State of Louisiana and Humble Oil & Refining Company. The consent judgment gave 50% of the property formerly owned by Mathurin Lequeux to the State and Humble (80% of 50% to the State, 20% of 50% to Humble), and 50% to the American heirs and LeBlanc (37.5% of 50% to the Kuehling group, 37.5% of 50% to Albert Lequeux, and 25% of 50% to Edward LeBlanc.) However, the judgment expressly preserved the rights of the French heirs to assert their claim to 11/27ths (of the 50% awarded the American heirs) against the Kuehling group and Albert Lequeux. At this point, the only remaining funds in escrow were those claimed by the French heirs adversely to the American heirs.
In 1961 Silas Cooper, the attorney for the French heirs of Mathurin Lequeux, proposed a settlement that would terminate the dispute between the heirs. After several *422 years of negotiations, a settlement was accepted by the Kuehling group, but rejected by the Lequeuxs. Therefore, the dispute as to the 11/27ths claimed by the French heirs, and their right to assert this claim against the American heirs, as preserved in the January, 1965 judgment ended as to the Kuehling group. However, the French heirs still asserted their claim against the 37.5% of 50% of Mathurin's interest granted to Albert Lequeux by the January, 1965 judgment.
Albert Lequeux died on December 2, 1964. He left as his heirs Clyde and Malcolm Lequeux, plaintiffs in rule in the instant matter. Edward LeBlanc died on March 23, 1969.
After the death of Mr. LeBlanc, Clyde and Malcolm Lequeux employed Charles Wooten to represent them. Mr. Wooten successfully negotiated a settlement with the French heirs, thus putting an end to the last dispute among the heirs of Mathurin Lequeux, leaving only the dispute between the heirs of Albert Lequeux and the heirs of Edward LeBlanc to be decided in this action.
This action was instituted by Malcolm and Clyde Lequeux against the heirs of Edward LeBlanc, by a rule to show cause, to have the employment contract between Albert Lequeux and Edward LeBlanc rescinded, insofar as it purported to convey to Edward LeBlanc any interest in the property described therein. Alternatively, the Lequeuxs asked the court to determine the value of the services rendered by LeBlanc, and to thereby reduce the amount of money and property to be returned by the LeBlanc heirs to the Lequeuxs.
The defendants in rule, the heirs of Edward LeBlanc, filed exceptions of prescription, res judicata and no right of action, in addition to an answer to the rule to show cause. The trial of the exceptions was referred to the merits.
The trial judge was of the opinion that Mr. LeBlanc had performed substantially all of the services contemplated by the contingency fee contract. But because LeBlanc died before he completed the representation, the judge awarded the LeBlanc heirs 20% of Albert Lequeux's interest in the property and money in escrow, rather than 25% as the contract had called for.
On appeal the court reversed. Oil Purchasers, Inc. v. Kuehling, 321 So.2d 17 (La.App. 3rd Cir. 1975). The court was of the opinion that the exceptions of res judicata and no right of action, reurged by the LeBlanc heirs, were not properly before it, because they had been waived by the failure to insist on a ruling on those exceptions in the court below. Therefore, the Court of Appeal did not consider the judgments of June 19, 1964 and January 11, 1965, which recognized LeBlanc's contract and interest in the property. The court concluded that an award in quantum meruit, which it construed the trial court's judgment to be, cannot consist of land, but only of money. The court then remanded the case for a determination of the money value of the land awarded by the trial court to the LeBlanc heirs. On application of the LeBlanc heirs, we granted writs.
The resolution of this dispute necessarily begins with an examination of the pertinent parts of both the contingent fee contract and the 1963 suit to annul, which culminated in the June, 1964 judgment. The contingent fee contract, entered into in August, 1961, provided in part:
"Therefore, in consideration of the services of EDWARD F. LEBLANC, heretofore rendered and to represent them herein and the services to be rendered hereinafter, each of the undersigned parties do hereby grant, give, convey, transfer, and deliver, with full warranty of title unto the said attorney an undivided 25% interest in whatever property may be initially adversely claimed judicially or extra judicially at this time or in the future; this undivided 25% interest includes all of the clients' rights, *423 titles and interest of any description whatsoever, corporeal and incorporeal, surface and minerals, including revenues in royalties which may have accrued or may accrue to the clients' interest, in and to the following described property:
. . . . . .
"It is agreed and understood by and between the parties hereto that this transfer of interest shall be complete and binding without further execution of any further instrument or agreement, upon there being filed in the Office of the Clerk of Court, Parish of Vermilion, State of Louisiana, any instrument whether a judgment of any court of competent jurisdiction, or any settlement agreement by the terms of which appearers entitled rights, titles, interest, to whatever extent, proportioned or manner, or (sic) therein recognized."
The contract provided for its recordation, and contained a provision to the effect that, if the clients attempted to discharge the attorney without cause, the contingent interest would "ipso facto vest" in the lawyer.[1]
In his petition to annul or rescind the employment contract, Albert Lequeux alleged (1) the contract purported to convey a 25% contingent interest in and to certain immovable property in Vermilion Parish in consideration of LeBlanc's furnishing legal services; and (2) that LeBlanc had failed to represent petitioner's interest as contemplated by the contract. Albert Lequeux prayed for a judgment declaring the contract null and void, or, alternatively, if the court found LeBlanc entitled to compensation, a money judgment rendered on a quantum meruit basis. Mr. LeBlanc reconvened as noted above.
The judgment rendered in the case on June 25, 1964 recited that it was submitted on the joint stipulation of all parties, who jointly moved for the rendition of the judgment, which provided in part:
"IT IS ORDERED, ADJUDGED AND DECREED that plaintiff's demands be denied and dismissed finally and that the Contract of date August 7, 1961, between the parties recorded in Vol. 477 page 100 under Entry No. 160817 Conveyance Records of Vermilion parish, Louisiana, a duly certified copy thereof annexed hereto, marked Exhibit `A' and paraphed `Ne Variteur' by this Court for identification herewith be and the same is hereby recognized and decreed as valid, binding and effective between the parties, ALBERT JEAN LEQUEUX (hereinafter referred to as LEQUEUX sometimes) and EDWARD F. LEBLANC (hereinafter referred to as LEBLANC sometimes) and of full force and effect SUBJECT ONLY to the following REFORMATION, DETERMINATION AND/OR SPECIFICATION with reference to the property and interests affected thereby, viz:
"That a vested right, title, share, portion, interest and ownership in and to the property itemized and described in said instrument of August 7, 1961, including all surface and minerals pertaining thereto, be and the same is recognized as having been fully and finally transferred, conveyed and delivered by ALBERT JEAN LEQUEUX to EDWARD F. LEBLANC in the following proportions,
"AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED:
"That the said EDWARD F. LEBLANC be and he is recognized as the exclusive attorney at law representing the interests of ALBERT J. LEQUEUX under, by virtue of and in keeping with said contract of August 7, 1961, uninterruptedly and satisfactorily to date, notwithstanding Lequeux's attempt to terminate his services on June 14, 1963 precipitating and resolving the within rights and actions and the said LeBlanc is hereby authorized to continue to *424 represent his and Lequeux's interests in all litigation, compromise and/or settlement relating to the rights and property described in said contract, and, each party shall have concurrent legal rights accordingly including rights of appeal. . ."
The Lequeux heirs contend this judgment could not transfer title to the described property to LeBlanc, because, at this time, Albert Lequeux did not have perfect title to the property, as it was in litigation among the various claimants. However, by compromise with the State and Humble in 1965 and the French heirs subsequent to that, title to certain of the properties did vest in Albert Lequeux, the transferor, and his heirs. Therefore, by virtue of the doctrine of after-acquired title, the title vested immediately in LeBlanc and his heirs, as the transferee. McDonald v. Richard, 203 La. 155, 13 So. 2d 712 (1943); St. Landry Oil & Gas Co. v. Neal, 166 La. 799, 118 So. 24 (1928); Wolf v. Carter, 131 La. 667, 60 So. 52 (1912); Comment, 18 La.L.Rev. 312 (1958).
A transaction, or compromise, as the 1964 judgment was, reduced to writing, has the authority of the thing adjudged. C.C. 3078 provides:
"Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected."
Not only was there a transaction, but the transaction was reduced to a judgment which conveyed an undivided interest in described property to Mr. LeBlanc. His ownership interest was effectively fixed.
Defendants complain that the Court of Appeal erred in holding that the exception of res judicata (and other exceptions) were not before the court on appeal, because they were not ruled on by the trial court, nor was a ruling requested by defendants, who neither appealed nor answered the appeal of plaintiffs.
The record seems to support the position of defendants, that the exceptions, although not mentioned in the trial court judgment, were tried, argued and necessarily overruled by the trial court, at least by implication, in the judgment which reduced the percentage of the property acquired by Mr. LeBlanc in the contract and prior judgment from 25% to 20% of the whole. After the exceptions were argued they were referred to the merits with the understanding that evidence adduced on the trial of the merits would apply to the exceptions.
Nevertheless, we find it unnecessary to rule on the difficult res judicata question presented. (There was a final judgment in an action on the employment contract the subject of this suitbetween the same parties or their successors in the same quality. C.C. 2286. The question is the identity of the cause, since the previous judgment contemplated the continued representation of the clients by the attorney, who subsequently died before the termination of the litigation for which he was employed. Hope v. Madison, 194 La. 337, 193 So. 666 (1940); Comment, 2 La. L.Rev. 347, 491 (1940). In the case before us, it can be said that its cause is the failure of performance by the attorney because of his death).
We need not reach the question of res judicata because the only relief defendants can be granted is a restoration of the trial court's judgment, from which defendants took no affirmative action for relief. In the absence of an appeal or an answer to the appeal (C.C.P. 2133), the judgment reducing the attorney fee from 25% to 20% is final as to defendants. Morgavi v. Mumme, 270 So.2d 540 (La.1972); Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). The Court of Appeal held, contrary to the trial court, that defendants were entitled, not to 20% of the money and land involved, but only to 20% of the value of the property involved. *425 It is from this ruling that defendants apply to us. This ruling, we find, is in error, and resolution of this point will restore the judgment of the trial court, which is as much relief as defendants can obtain.
The Court of Appeal held that defendants "cannot recover under the contract because he (LeBlanc) died without completing it. They can recover only in quantum meruit." La.App., 321 So.2d 17, 23. Quantum meruit is a "striking example of an ill-considered importation from the common law . . ." Comment, 50 Tul.L.Rev. 631 (1976). It supplied a need in early common law and has been expanded in our jurisprudence. However, its lack of underlying theoretical basis has "led inexorably to confusion and inconsistency." 50 Tul.L.Rev. 631, 653.
A better analysis of the judgment reducing the attorney fee from 25% to 20% is that the benefits Mr. LeBlanc and his heirs obtained under the judgment recognizing the contract in 1964 were reduced in proportion to the value of the services which remained to be performed at his death. The judgment actually rendered modified the 1964 judgment and the 1961 contract of employment.
The demand of plaintiffs adequately meets the five prerequisites of actio de in rem verso recognized in Louisiana in Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967); Edmonston v. A-Second Mortgage Co., 289 So.2d 116 (La.1974). Comment, 43 Tul.L.Rev. 263 (1969). The impoverishment of plaintiffs in rule (the need to obtain other legal assistance on the death of Mr. LeBlanc) is directly related to the enrichment of defendants (the receipt of the entire fee) without justification or cause (the enrichment and impoverishment are not the result of the contractual provisions, but the result of the death of Mr. LeBlanc; see 43 Tul.L.Rev. 263, 269 (1969)) and there is no other available remedy.
Therefore, we need not plow in the uncertain ground of quantum meruit, and need not reach the rather mechanical result that only money can be awarded, not land. The availability of the actio de in rem verso dispenses with such tasks.
We agree with the Court of Appeal and the trial court in the analysis of the evidence of the representation by Mr. LeBlanc. The trial court found that he had performed "substantially all of the services contemplated by the contract." This finding is not overcome by plaintiffs. The trial court reached the conclusion that the value of the services remaining to be rendered after Mr. LeBlanc's death was about 20% of the whole, and therefore ordered a 20% reduction of the fee, thereby reducing the fee from 25% of the property to 20% of the property.
For these reasons, the judgment of the Court of Appeal is reversed, and the judgment of the district court is reinstated, at the cost of plaintiffs in rule.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
Although I agree with the majority that 20% of the property itself, rather than 20% of its monetary value, can be awarded to the heirs of Edward LeBlanc, I do not believe that this case calls for application of the actio de in rem verso. The actio de in rem verso is a subsidiary remedy that can be used only when no other legal relief is available. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). In my view, the Civil Code provides a remedy for the attorney's heirs, so that resort to the actio de in rem verso is inappropriate.
Articles 2766 and 2767 of the Civil Code state:
Art. 2766 Contracts for hiring out work are canceled by the death of the workman, architect or undertaker, unless the proprietor should consent that the work should be continued by the heir or heirs *426 of the architect, or by workmen employed for that purpose by the heirs.
Art. 2767 The proprietor is only bound, in the former case, to pay to the heirs of the undertaker the value of the work that has already been done and that of the materials already prepared, proportionably to the price agreed on, in case such work and materials may be useful to him.
(Emphasis added).
The principles announced by these articles, while technically applicable only to contracts of hiring out work, should also be applicable to the contract of mandate involved herein, which stipulated a commission (article 3022) and which similarly expired with the death of the agent (article 3027). Article 2767 declares that when the undertaker dies his heirs should be recompensed for the value of his work proportionably to the price agreed on. The attorney's fee or commission, i. e., the "price agreed on," was under the contract in this case 25% of the property itself and not its value or a sum of money. The attorney died after completing about 80% of the services contemplated in the agreement. Hence, I believe that payment in property, reduced in proportion to the amount of services that remained to be performed after his death, is authorized by Civil Code article 2767 and is proper under the facts of this case.
I therefore respectfully concur.
NOTES
[1] We make no finding as to the effect of such a provision.