FRED W. JONES, Jr., Judge.
Pasquier, Batson & Company (“Pasquier”), a Shreveport accounting firm, sued a number of former stockholders of The Times Publishing Company, Ltd. (“Times”) for professional services allegedly rendered to the defendants. The latter answered and reconvened against the plaintiff and its principal partner, demanding a refund of monies withdrawn from an escrow account.
In written reasons for judgment the trial judge ruled that Pasquier was entitled, on the basis of quantum meruit, to recover from these defendants a total of $199,894.14 for professional services rendered. On the reconventional demand, the trial court held that plaintiffs-in-reconvention were due $31,992.13 of the funds withdrawn from an escrow account by Pasquier.
Defendants appealed, arguing that: (1) The judgment in favor of Pasquier — for the various reasons to be discussed — was excessive; (2) their plea of payment should have been upheld; (3) interest should have run from date of judgment rather than from judicial demand; (4) they were awarded an inadequate amount on the reconventional demand.
Pasquier answered the appeal, contending that it was not granted judgment for the full value of its services and that the recon-ventional demand award was excessive. Context Facts
In February 1976 minority stockholders sued the Times for dissolution and liquidation of the corporation. The Times Board of Directors instructed its attorney to defend the suit and directed that its accounting firm, Pasquier, assist the designated legal counsel in the preparation of that defense.
During the ensuing months the parties to this litigation explored various methods for resolving their dispute, including the sale of the Times’ stock to a third party. Pasquier’s principal partner, Charles F. Pasquier, assisted attorneys for both sides in assembling required financial data and in meeting with prospective purchasers. On September 27, 1976 an agreement in principle was reached under which the Gannett Company, Inc. (“Gannett”) was to purchase all outstanding stock of the Times. Because of detailed legal and accounting work necessitated by a transaction of this magnitude ($61,000,000), sale of the stock was not consummated until June 16, 1977. During this period Pasquier performed, on behalf of the stockholders, all of the required accounting services.
For professional services allegedly rendered between February 1976 and July 1977, Pasquier billed the Times shareholders for a total of $389,865 (at $1185 per share). Some of the recipients of the statements paid, remitting a total of $134,016.09. The other stockholders refused to pay. Pasquier sued them in December 1977 for a total of $255,848.91. In responsive pleadings the *727 defendants claimed entitlement to a setoff for sums paid by the complying stockholders.
Under the stock purchase agreement some $5,000,000 of the purchase price was placed in an escrow account for three years to protect Gannett from any undisclosed liabilities or other claims. The stockholders executed a written instrument designating Charles F. Pasquier as their representative in connection with this escrow account. He was expected to consult with the escrow bank concerning investment of the funds and disburse accrued interest to the shareholders. The contract stipulated that the representative’s fee for this service would be based upon his customary hourly rate.
Despite a protest by these defendants, when the escrow period ended in 1980 Charles Pasquier withheld $48,750 from the escrow funds as his fee for serving as the stockholders’ representative. In addition, during this three year period Mr. Pasquier paid to his accounting firm the sum of $130,956.51 for accounting services. Defendants reconvened for their proportionate part of the sums withdrawn and expended from the escrow account, contending that these actions were unauthorized.

Trial Court Ruling

In its written reasons for judgment, the trial court found that, in the absence of a contract, Pasquier was entitled to recover from defendants on the basis of quantum meruit. In substance, it ruled:
(1) During the first time period (6 February — 26 September 1976) Pasquier was entitled to recover from all stockholders the sum of $145,000 for “assisting in locating a purchaser for their stock.” Defendants’ proportionate part came to $91,874.86.
(2) During the second time period (1 October 1976 — 16 June 1977) services rendered by Pasquier to‘these defendants were valued at $108,019.28.
(3)For services rendered during the escrow period (June 1977 — June 1980) Pasquier was due a commission of 2.5% of funds invested, of which amount these defendants owed $82,-037. Since Pasquier withheld $85,-940.08 of their funds, it owed plaintiffs-in-reconvention the difference. Further, Charles Pasquier should not have withheld the $48,750. Therefore, the pro rata portion owed these plaintiffs-in-reconvention from the funds expended or withheld from the escrow account amounted to $31,-992.13.

Issues on Appeal

Claim for Services, First Time Period (Feb. — Sep. 1976)
Defendants deny that Pasquier was entitled to any payment at all from the Times stockholders for services during this period, pointing out that the accounting firm was employed solely by the Times Board of Directors to assist in the defense of the minority shareholders’ suit for liquidation of the corporation.
Since there obviously was no contract between Pasquier and the stockholders during this period, recovery may not be had on that basis. Therefore, the issue posed is: did Pasquier during this time frame perform any services that redounded primarily to the benefit of the Times stockholders for which it is entitled to be compensated under the principle of unjust enrichment?[1]
According to the testimony of Charles Pasquier and Robert Jeter (legal counsel for the Times), labors directed at defense of the minority stockholders’ lawsuit gradually turned into contacts with parties manifesting an interest in purchasing outstanding stock of the Times. This was apparently becoming an increasingly attractive alter *728 native to pursuit of the litigation, from the standpoint of both minority and majority shareholders. At the beginning there were between 10 and 15 prospective purchasers of the stock. When an interested party requested financial data, it would be supplied by Pasquier. If meetings were asked for, the Times attorney along with the accountant would routinely comply with the request. These conferences were normally unstructured, with some lasting only a brief time and others for a day. For example, Pasquier met with a local prospective purchaser on between 7 or 10 occasions. Finally, of course, meetings with representatives of Gannett led to a sale of the stock.
Our consideration of this unrefuted evidence leads to the conclusion that during this time period, in addition to working primarily for the corporation in the defense of the minority stockholders’ lawsuit, Pas-quier also performed professional services that “enriched” all the Times stockholders. Recovery may be had for the value of those services under the doctrine of unjust enrichment. See Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967); Porter v. Johnson, 408 So.2d 961 (La.App. 2d Cir.1981).
In these cases the measure of recovery is quantum meruit—based upon a reasonable evaluation of the services performed as adjusted to the circumstances of the individual situation. Oil Purchasers, Inc. v. Kuehling, 321 So.2d 17 (La.App. 3rd Cir.1975); Swan v. Beaubouef, 206 So.2d 315 (La.App. 4th Cir.1968).
Pasquier maintained a record during this period showing time spent in connection with the defense of the stockholder suit, but did not keep a time sheet on services rendered for the stockholders directly. The former reflected a total of 640 hours, for which the corporation was billed and paid $125,000.
Charles Pasquier estimated that, in addition to the recorded hours during this period for which the Times paid, he devoted some 329 unrecorded hours to this project. Considering this time in the light of the charge to the corporation for the 640 recorded hours, and bearing in mind the nature of the services performed by Pasquier which benefited the stockholders as distinct from the corporation, we conclude that the value of those services during this time period amounted to $62,500, rather than the $145,000 fixed by the trial judge. As owners of .656249 of the outstanding Times stock, defendants are liable for that proportion of this amount, or $41,015.57.

Claim for Services, Second Period (Oct. 1976—June 1977)

Defendants concede that Pasquier performed accounting services for them during this period, but argue that the trial judge’s award was excessive—particularly in view of their expert testimony presented at the trial.
Although there was no formal contract between the stockholders and Pasquier for accounting services during this time frame, it is apparently admitted that there was some contractual arrangement despite the absence of an agreement on compensation. The issue presented here is: what is Pasquier due for professional services performed in accordance with that understanding?
Records kept by Pasquier during this time frame reflected a total of 1469 hours devoted by the firm to this account, 711 of which were “partner” hours and 758 were “staff” hours. Charles Pasquier and Jeter testified that the former attended numerous meetings relating to the stock sale to Gannett, furnished financial information to the attorneys, prepared financial statements for March and April 1977, and ensured compliance by all parties with the stock purchase agreement. In addition, Pasquier furnished Gannett with the standard “comfort” letter containing assurances that the Times’ financial posture was accurately depicted in the data supplied by Pas-quier.
In support of its claim Pasquier presented the testimony of two Certified Public Accountants. Both, however, simply gave aggregate estimates for services performed from February 1976 through June 1977, *729 without making separate evaluations for the two described time periods. William Cloud reviewed the pertinent files and concluded that a fee of $500,000, plus or minus 10%, would be appropriate. He would have allocated one-third of this to the newspaper and two-thirds to the shareholders. Based upon his estimation of the records, Harry Viser fixed a fair fee at between $1200 and $1500 per share.
The three Certified Public Accountants who testified on behalf of defendants focused only on the second time period. Basing their estimates primarily upon Pasquier’s time sheets, they were as follows: Snyder — minimum of $105,200 to maximum of $118,850; White — minimum of $60,000 to maximum of $120,648; Lincove — minimum of $60,596 to maximum of $87,841.
It appears from the record that a fair fee for Charles Pasquier’s 711 recorded hours during this second time period (at $100 per hour) would be $71,100, as confirmed by defendants’ expert, Snyder. The latter also allowed in his estimate the highest figures for staff hours — $47,750. Total of the two would be $118,850, which we find the record supports as the reasonable value of Pasquier’s services performed for the stockholders during this second time period. Defendants’ proportionate share of this debt is $77,995.20 rather than the $108,019.28 allowed by the trial judge.

Pie a of Payment

Defendants argue that any indebtedness by them to Pasquier should be credited with the $134,016.09 paid by the non-defendant stockholders. Pointing out that this court has previously classified the shareholders’ obligation as joint rather than several [Pasquier, Batson & Co. v. Ewing et al, 367 So.2d 28 (La.App. 2d Cir.1978)][2] they assert that this single obligation was reduced by anyone’s payment, citing La.C.C. Art. 2134.[3]
We do not agree with defendants’ interpretation of Article 2134. As joint obligors, each of these stockholders was bound for his pro rata portion of the total indebtedness to Pasquier. La.C.C. Arts. 2080, 2085-2087. Each was billed and those who paid presumably did so to liquidate their individual debts and not to pay on the obligations of the others. Any overpayment would have to be claimed by the stockholder who made the payment. Credit to defendants under Article 2134 would be allowed only if those stockholders paying were proved to have intended to make those payments for the benefit of other stockholders also. This was not done.
Defendants’ plea of payment was correctly denied by the trial judge.
Reeonventional Demand — June 1977 — June 1980
As previously explained, the stock purchase agreement with Gannett stipulated that 8.2% of the $61,000,000 purchase price would be placed in escrow for a three year period. In connection therewith, by written agreement the shareholders designated Charles Pasquier as their representative. His duties generally were to evaluate any claims by Gannett against the escrow account, to collaborate with the escrow bank on investment of the funds and to disburse interest checks to the shareholders. The contract expressly provided that the Stockholders’ Representative would be entitled to reasonable compensation for services rendered in that capacity “based upon his then customary rate of compensation for professional services.” The agreement further authorized Mr. Pasquier to retain the services of accountants to assist in the performance of his duties. He was also specifically empowered to deduct sums due him for his fee and related costs from shareholders’ assets in his possession.
*730 Pursuant to this latter authorization, Mr. Pasquier paid himself a Stockholders’ Representative fee of $48,750 and paid his accounting firm $130,956.51 for services rendered over the three year escrow period. In their reconventional demand, defendant shareholders contended that these payments were unwarranted and sought return of their proportionate part.
In discussing the reconventional demand, the trial judge apparently ignored the described written contract and made no distinction between the Stockholders’ Representative fee and the sums charged for accounting services rendered to Mr. Pasquier in this capacity. Conversely, his approach was simply to allow Pasquier, for services rendered during this escrow period, a commission of 2.5% of the invested funds, for a total of $82,037 attributable to the defendants. The claimed fee of $48,750 for serving as Stockholders’ Representative was disallowed.
On appeal, plaintiffs-in-reconvention concede that Mr. Pasquier was entitled to a reasonable fee (based upon his customary hourly rate) for his services as Stockholders’ Representative and suggest a maximum figure of $15,747.50.
According to the record, the exact amount placed in escrow was $5,002,000.10. Investment of this over the three year period earned $1,044,018.71.
Mr. Pasquier testified that his primary duties as Stockholders’ Representative related to investment of the escrowed funds, receipt of interest from the escrow agent and disbursement of investment proceeds. The witness conceded that he did not keep a record of the time devoted to carrying out his duties as Stockholders’ Representative, but simply attempted to calculate that time to the best of his ability and recollection. He estimated having spent 56 hours handling 28 different remittances of interest from the escrow bank and 340 hours on 17 distributions of funds to 32 shareholders. His customary hourly rate during this period was $80. In addition to these functions, Mr. Pasquier reviewed semi-annual accountings from the escrow bank, wrote the stockholders concerning the taxable and non-taxable portions of their investment, and visited regularly with key Times employees.
Based upon our review of this evidence, we conclude that Charles Pasquier was entitled to $35,000 as a fee for his services as Stockholders’ Representative. The difference between this and the $48,750 withheld from escrow funds is $13,750, of which plaintiffs-in-reconvention are entitled to their proportionate share, or the sum of $9,023.43.
Also in connection with the recon-ventional demand, plaintiffs-in-reconvention argue that they are entitled to the return of their proportionate share of the $130,956.51 paid by Mr. Pasquier to his accounting firm because compensation for that work is included in the fee due the Stockholders’ Representative.
We do not agree. As previously explained, the written instrument executed by the stockholders appointing Charles Pasquier as their representative in dealing with the escrow funds clearly contemplated both a fee to him for services rendered in this capacity as well as compensation to accountants assisting him. Time sheets maintained by the accounting firm for this three year period are summarized on Exhibit “Y”, showing a total of 1567 hours spent on this project. The fact that Charles Pasquier furnished a substantial portion of those accounting services is not objectionable since they were distinct from his duties as Stockholders’ Representative.
Since the record contains no evidence refuting the data upon which the accounting firm based its charges for services during the three year escrow period, plaintiffs-in-reconvention are not entitled to a return of any portion of the questioned sum.

Judicial Interest

It is well established that when recovery is measured on the basis of quantum meruit, legal interest is allowed from the date of judgment rather than from judicial demand. Succession of Butler, 294 So.2d 512 (La.1974); Smith v. McMichael, 381 *731 So.2d 898 (La.App. 2d Cir.1980); Brummett v. Hamel’s Dairy, Inc., 324 So.2d 502 (La.App. 2d Cir.1975). Consequently, the district court judgment erred in awarding legal interest from judicial demand.

Summary

We have concluded that:
(1) For services rendered during the First Time Period, Pasquier is entitled to recover from these defendants the sum of $41,-015.57, with each owing a pro rata portion based upon his stock ownership.
(2) For services rendered during the Second Time Period, Pasquier is entitled to recover from these defendants the sum of $77,995.20, with each owing a pro rata portion based upon his stock ownership.
(3) On the reconventional demand, plaintiffs-in-reconvention are entitled to recover from Pasquier the sum of $9,023.43, with the amount due each based upon his stock ownership.

Decree

For the reasons set forth, judgment of the district court is amended by recasting the substantive provisions to read:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, MILDRED HUNT EWING, in the full sum of $12,264.52, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, ESTHER EWING JENSEN, in the full sum of $14,331.55, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, ESTHER EWING WYNNE JERNIGAN, in the full sum of $1,102.43, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, ELIZABETH BELLE WYNNE, in the full sum of $1,102.43, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, ROBERT EWING, III, in the full sum of $15,433.97, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, ROBERT EWING IV, in the full sum of $551.30, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, KRISTA KATHERINE EWING, in the full sum of $551.30, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, PATRICIA EWING HENDRICK, individually, in the full sum of $5,512.13, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, PATRICIA EWING HENDRICK, as trustee for Robert Ewing DeBerardinis under the will of Isabelle LaFonta Ewing, in the full sum of $551.30, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, PATRICIA EWING HENDRICK, as trus *732 tee for Nicholas William DeBerardinis, Jr. under the will of Isabelle LaFonta Ewing, in the full sum of $551.30, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER; BATSON & COMPANY, and against the defendant, PATRICIA EWING HENDRICK, as trustee for David DeBerardinis under the Inter Vivos Trust of Robert Ewing, Jr., of December 28, 1966, in the full sum of $275.47, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendants, COMMERCIAL NATIONAL BANK and PAULA EWING, widow of John D. Ewing, Jr., as Coexecutors of the Succession of John D. Ewing, Jr., in the full sum of $22,668.75, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, FIRST NATIONAL BANK OF SHREVEPORT as trustee under the “Robert Ewing, Jr. Trust”, an Inter Vivos Trust of December 23, 1963, in the full sum of $11,024.27, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, FIRST NATIONAL BANK OF SHREVEPORT as trustee of the “Robert Ewing, Jr. Trust”, a testamentary trust created under the will of Robert Ewing, Jr., in the full sum of $27,423.02, together with judicial interest from date of judgment;
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PASQUIER, BATSON & COMPANY, and against the defendant, HELEN CLAY HINES, in the full sum of $5,667.01, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, MILDRED HUNT EWING, and against the defendant in reconvention, PASQUIER, BATSON & COMPANY in the full sum of $929.90, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, ESTHER EWING JENSEN, and against the defendant in reconvention, PASQUIER, BATSON & COMPANY, in the full sum of $1,086.62, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, ESTHER EWING WYNNE JERNIGAN, and against the defendant in reconvention, PASQUIER, BATSON & COMPANY, in the full sum of $83.59, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, ELIZABETH BELLE WYNNE, and against the defendant in re-convention, PASQUIER, BATSON & COMPANY, in the full sum of $83.59, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, ROBERT EWING III, and against the defendant in reconvention, PASQUIER, BATSON & COMPANY, in the full sum of $1,170.21, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, ROBERT EWING IV, and against the defendant in reconvention, PASQUIER, BATSON & COMPANY, in the full sum of $41.80, together with judicial interest from date of judgment;
*733 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, KRISTA KATHERINE EWING, and against the defendant in recon-vention, PASQUIER, BATSON & COMPANY, in the full sum of $41.80, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, PATRICIA EWING HEN-DRICK, individually, and against the defendant in reeonvention, PASQUIER, BAT-SON & COMPANY, in the full sum of $417.93, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, PATRICIA EWING HEN-DRICK, as trustee for Robert Ewing De-Berardinis under the will of Isabelle LaFon-ta Ewing, and against the defendant in reconvention, PASQUIER, BATSON & COMPANY, in the full sum of $41.80, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, PATRICIA EWING HEN-DRICK, as trustee for Nicholas William DeBerardinis, Jr. under the will of Isabelle LaFonta Ewing, and against the defendant in reconvention, PASQUIER, BATSON & COMPANY, in the full sum of $41.80, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, PATRICIA EWING HEN-DRICK, as trustee for David DeBerardinis under the Inter Vivos Trust of Robert Ewing, Jr., of December 28, 1966, and against the defendant in reconvention, PASQUIER, BATSON & COMPANY, in the full sum of $20.89, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiffs in reconvention, COMMERCIAL NATIONAL BANK and PAULA EWING, widow of John D. Ewing, Jr., as Co-executors of the Succession of John D. Ewing, Jr., and against the defendant in reconvention, PASQUIER, BATSON & COMPANY, in the full - sum of $1,718.75, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, FIRST NATIONAL BANK OF SHREVEPORT as trustee under the “Robert Ewing, Jr. Trust”, an Inter Vivos Trust of December 23,1963, and against the defendant in reconvention, PASQUIER, BATSON & COMPANY, in the full sum of $835.86, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, FIRST NATIONAL BANK IN SHREVEPORT as trustee of the “Robert Ewing, Jr. Trust”, a testamentary trust created under the will of Robert Ewing, Jr., and against the defendant in reconvention, PASQUIER, BATSON & COMPANY, in the full sum of $2,079.22, together with judicial interest from date of judgment;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in reconvention, HELEN CLAY HINES, and against the defendant in reconvention, PASQUIER, BATSON & COMPANY, in the full sum of $429.67, together with judicial interest from date of judgment.
As amended, the district court judgment is affirmed. Costs of appeal are assessed one-half to PASQUIER and one-half to the defendants.
SEXTON, J., concurring in part and dissenting in part and assigning written reasons therefor.

. La.C.C. Art. 1965 provides:
The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When thé law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity.

. In this opinion we reversed a trial court judgment sustaining exceptions of improper venue and remanded the case for further proceedings.

. Art. 2134.
An obligation may be discharged by any person concerned in it, such as a coobligor or a surety.
The obligation may even be discharged by a third person no way concerned in it, provided the person act in the name and for the discharge of the debtor, or that, if he act in his own name, he be not subrogated to the rights of the creditor.